JOHN CARMICHAEL ET AL. V. IRA CARMICHAEL ET AL.

*Will—Agreement as to testamentary disposition—Statute of frauds —Part performance—Equity.*

1. A person may enter into a valid agreement binding himself to make a particular testamentary disposition of his property. *Faxton v. Faxon*, 28 Mich. 159; *Sword v. Keith*, 31 Id. 247; *Mundy v. Foster*, Id. 313; *DeMoss v. Robinson*, 46 Id. 62.
2. Where pursuant to a mutual agreement resting partly in parol, and involving the disposition of land, a father and mother made their respective wills, and the father died leaving his will unrevoked, and the mother accepted the provisions made in her favor therein, there has been such a performance and acceptance as takes the agreement out of the statute of frauds, and equity will decree performance by the mother, or take such steps as will prevent her from violating her part of the contract, in fraud of the rights of parties interested therein.

Appeal from Hillsdale. (Watts, J.) Argued June 5, 1888. Decided October 26, 1888.

Bill to enforce specific performance of agreement as to testamentary disposition of property. Complainants appeal.

Decree reversed, and one entered granting the relief sought. The facts are stated in the opinion.

*J. V. Rogers (E. L. Koon,* of counsel), for complainants, contended:

1. The transaction of August 14, 1884, by which the two deeds and life-lease were brought into existence to defraud the complainants out of their future contingent interest in the 40 acres of land mentioned in said instruments, should not, under the evidence, be upheld, thus giving judicial sanction to a transaction into which fraud, conspiracy to cheat, want of consideration, undue influence, mental incapacity, abuse of confidence, and legal disability all entered; citing *Seeley v. Price,* 14 Mich. 541; *Wartemberg v. Spiegel,* 31 Id. 400; *Jacox v. Jacox,* 40 Id. 473; *Thorn v. Thorn,* 51 Id. 167; *Raynett v. Baluss,* 54 Id. 469; *Crawford v. Hoeft,* 58 Id. 1; *Twist v. Babcock,* 48 Id. 513; *Leonardson v. Hulin,* 64 Id. 1; *Churchill v. Scott,* 65 Id. 485; *McDaniel v. McCoy,* 68 Id. 332.

2. The agreement between Charles and Ann Carmichael, which was consummated by the making of their mutual wills, should be upheld, on the ground that it is not only an equitable and fair division of the property, but it is legal and in accordance with well-settled rules of equitable law; citing Williams, Ex'rs (6th Am. ed.), 12, 13, 162, 163, and notes; *Dufour v. Bereira,* 1 Dickens, 419; *Rivers v. Rivers,* 3 Desaus. (S. C.) 188; *Walpole v. Orford,* 3 Ves. 401; *Masterman v. Maberly,* 2 Hagg. 103 (top); *Loffus v. Maw,* 3 Giff. 592; *Vanduyne v. Vreeland,* 11 N. J. Eq. 370, 12 Id. 142; and as to what is a sufficient agreement see *Johnson v. Hubbell,* 10 N. J. Eq. 322; *Ex parte Day,* 1 Brad. (N. Y.) 476; and see, also, *Lee's Appeal,* 53 Conn. 363; *Gates v. Preston,* 41 N. Y. 115; *McKeegan v. O'Neill,* 22 S. C. 454; *Allen v. Allen,* 28 Kan. 18; *Wood v. Roane,* 35 La. Ann. 865; *Towle v. Wood,* 49 Am. Rep. 326; *Rogers v. Probate Judge,* 11 Me. 303; *In re Diez,* 50 N. Y. 88; *Schumaker v. Schmidt,* 44 Ala. 454; *Lewis v. Scofield,* 26 Conn. 452; *Taylor v. Mitchell,* 87 Penn. St. 518; and for cases bearing indirectly on this proposition, see *Reithmaier v. Beckwith,* 35 Mich. 110; *Faxton v. Faxon,* 28 Id. 159; *Sword v. Keith,* 31 Id. 247; *DeMoss v. Robinson,* 46 Id. 62; *Mundy v. Foster,* 31 Id. 313; *Leonardson v. Hulin,* 64 Id. 1.

*A. St. John,* for defendants, contended:

1. If complainants are entitled to relief, it must be on a bill in the nature of a proceeding for specific performance of an oral contract to convey land; citing *DeMoss v. Robinson,* 46 Mich. 62;

*Harder v. Harder*, 2 Sandf. Ch. 19; *Gould v. Mansfield*, 103 Mass. 408.

2. To authorize a decree for specific performance of a parol contract, its terms must be so clear and complete as to admit of no reasonable doubt respecting its enforcement according to the understanding of the parties, and such acts of part performance as will justify such enforcement, and payment of the purchase price; citing *Burtch v. Hogge*, Har. Ch. 31; *McMurtrie v. Bennette*, Id. 126; *Millerd v. Ramsdell*, Id. 391, 392; *Wilson v. Wilson*, 8 Mich. 1; *Mowrey v. Vandling*, 9 Id. 39; *McClintock v. Laing*, 22 Id. 212, 217; *Blanchard v. Railroad Co.*, 31 Id. 43, 53; *Wright v. Wright*, Id. 380; *Brown v. Brown*, 47 Id. 378, 384; and the proof must make the same case stated in the bill; citing *Harwood v. Underwood*, 28 Mich. 427; *Ford v. Loomis*, 33 Id. 121; *Peckham v. Buffam*, 11 Id. 529; *Dunn v. Dunn*, Id. 284; *Wurcherer v. Hewitt*, 10 Id. 453; *Covell v. Cole*, 16 Id. 223.

3. Ann Carmichael did not deliver her will, except for safe keeping. If it was a deed irrevocably conveying land, it ought, at least, to have been delivered; citing Schouler, Wills, § 274; *Nichols v. Chandler*, 55 Ga. 369; and the mere fact that the will was put into Mercer's hands will not bind her,—it was still revocable; citing *Jackson v. Phipps*, 12 Johns. 418; *Austin v. Curtis*, 41 Mich. 723.

4. The conduct of relations and others towards individuals is better evidence of what they think of their mental soundness than any words they can use to express such thoughts; citing *Jacox v. Jacox*, 40 Mich. 473.

5. When the language employed in a will is clear, and of well-defined force and meaning, extrinsic evidence of what was in fact intended is inadmissible to qualify, explain, enlarge, or contradict this language; citing Schouler, Wills, § 568; 1 Greenlf. Ev. § 290; *Canfield v. Bostwick*, 21 Conn. 550; *Brown v. Saltonstall*, 3 Metc. 426.

6. Whether a writing is a will depends upon its contents, and not upon any declarations of the maker when he executes it; citing *Patterson v. English*, 71 Penn. St. 454.

7. As to when parol evidence is admissible to aid in the construction of a will, see *Tuxbury v. French*, 41 Mich. 7; *Cleverly v. Cleverly*, 124 Mass. 314; *Dunham v. Gammett*, Id. 151; 1 Greenlf. § 287.

8. A will may embody another instrument or document, and make it a part of it; citing Schouler, Wills, § 281; but in order to do so it must on its face plainly refer to the extraneous writing, which must be in existence at the time the will is made; citing

*Newton v. Society*, 130 Mass. 91; *Lucas v. Brooks*, 18 Wall. 436; *Baker's Appeal*, 107 Penn. St. 381.

*Thomas A. Wilson*, for defendants, contended:

1. If the oral agreement is conceded, it was void under the statute of frauds, so far as it related to the disposition of land; citing *DeMoss v. Robinson*, 46 Mich. 62; *Harder v. Harder*, 2 Sandf. Ch. 19; *Gould v. Mansfield*, 103 Mass. 408; *Schumaker v. Schmidt*, 44 Ala. 454.

2. Had they been mutual wills, made by the same instrument, either party could have revoked it, so far as it was his or her will, at pleasure; citing *Betts v. Harper*, 39 Ohio St. 639; *In re Diez*, 50 N. Y. 88; *Mandlebaum v. McDonell*, 29 Mich. 91.

MORSE, J. The complainants are two sons and a daughter of Charles Carmichael, Sr., now deceased, and the defendant Ann Carmichael. The defendants Ira Carmichael and Charles Carmichael are brothers of the complainants. Hattie E. Disbrow is a sister. Charles I. Carmichael, known in the record as Charles Ira, is a son of the defendant Ira Carmichael.

Charles Carmichael, Sr., in 1858, lived in Wheatland, in the county of Hillsdale, and owned 160 acres of land. In that year the complainant Delos Carmichael was convicted of a State-prison offense. His father was his bail. Delos absconded, with the full consent of all the family. His father settled the bond at an expense of something over $1,000.

About this time the father deeded 120 acres of his land to his son Charles, reserving and keeping the title to 40 acres, the homestead, and in his own name. The 120 acres was afterwards deeded back to the father, excepting 40 acres, which at his request was conveyed by Charles to his mother, the defendant Ann Carmichael.

Soon afterwards, and up to 1866, different conveyances were made by the father to his children, in which his wife joined. By these deeds Ira received 58 acres; Charles, Jr., 35 acres; and John, 22 acres. Hattie was given $1,000

with which to purchase 20 acres of land. This left 60 acres remaining in the name of the father, and 40 acres in the name of the mother, lying together in one tract. The children took possession of the respective pieces of land conveyed to them. It does not appear that any provision was made at this time for the complainants Delos and Matilda.

November 9, 1872, the father and mother made wills. The will of the former bequeathed all the personal property to his wife absolutely, and the 60 acres of land to her during her life-time. At her death Charles was to have 10 acres, and $500 to be paid out of the real estate; and the remaining 50 acres was to be divided equally between John, Delos, and Matilda. The will stated that Ira and Hattie had received what was intended as their portion of the estate. The wife devised to her husband all her personal property absolutely, and the 40 acres during his life-time. At his death the land was to be divided equally between John, Delos, and Matilda.

It is the theory of the complainants' bill that these conveyances to Ira, John, and Charles, the payment of the $1,000 to Hattie, and the two wills, were intended by the father and mother as an equitable division of their property among their children; the whole shares of Delos and Matilda, and a portion of John's, being postponed in delivery until after the death of both parents. The evidence seems to support this theory.

It is also alleged in the bill that this disposition of the property was mutually agreed to by the father and mother, and that the inducement of Charles, Sr., to make his will as he did, was because of the promise of the defendant Ann Carmichael that she would make her will as she did; that each will was made and executed in pursuance of a mutual promise and agreement that each should be so made as aforesaid; and that, without said

promise and agreement by the one to the other, neither of said wills would have been so made. This promise and agreement, if made, was in part an oral one.

Charles, Sr., died June 28, 1884. Up to this time neither of said wills had been revoked or altered, and both were in the possession of one William Mercer, with whom they were deposited soon after their execution. In the mean time no further advancements had been made to any of the children.

A few days after the death of their father, the children made an arrangement with their mother by which the personal property, about $3,600, was divided equally among them, they giving their obligations to her to pay her interest upon that sum while she lived.

Delos and Matilda resided away from their mother,— Matilda in Allegan county, and Delos out of the State. Hattie and Ira lived near to her.

August 14, 1884, the mother conveyed by warranty deed her 40 acres to Hattie and Charles Ira, and on the same day they deeded one-third of the same to Ira. These three on the same day gave the mother a life-lease of the same premises. These conveyances were all recorded on the day they were executed, but the register was requested not to have the fact of such execution and record published. It was nearly a year before the existence of these conveyances was discovered by the complainants. They then sought to settle the matter, and procure from Ira, Hattie, and Charles Ira a deed of the premises back to their mother, but were unable to do so. They then filed the bill in this cause.

The bill, after averring the facts, alleges that the defendant Ann Carmichael, at the time she deeded the property, was 78 years of age, old and feeble, both physically and mentally, and easily influenced; that the three

beneficiaries of these conveyances, knowing her condition, conspired together to poison and prejudice her mind against the complainants, and to unduly influence her against them, in which conspiracy they succeeded, and operating fraudulently, and for the express purpose of cheating complainants out of their just rights under the said wills, obtained this deed to Hattie and Charles Ira without any consideration whatever; that the mind of their mother was so weak and open to undue influence that she was not competent to execute this conveyance, and was not fit to do business; that it was obtained by undue influence, and by false and untruthful statements; that she did not know at the time she executed the deed that Ira was to have any interest in the land, and never intended it; that said conveyance was obtained by fraud practiced upon said Ann Carmichael by Ira, Hattie, and Charles Ira, and that it was done to deprive complainants of their title to the same after the death of the said Ann; that the one-third interest was conveyed to Ira without the knowledge of the said Ann.

The complainants, therefore, pray that the deeds and the life-lease be set aside, and that injunction issue restraining said defendants from disposing of, transferring, or in any manner interfering with, said real estate, or any part thereof, and for such other relief as may be necessary to enforce and protect their rights in the premises.

The defendants admit receiving the property advanced to them about the time of the execution of the wills, and admit the execution of them, and the terms thereof, as set forth in the bill; but deny that said wills were made under any such understanding or agreement between their father and mother as claimed by the bill. They deny the incompetency of Ann to make the deed to Hattie and

Charles Ira, and deny any fraud or undue influence in the execution of the same. They allege that Ann was fully competent to dispose of the said 40 acres of land, and that she conveyed the same of her own free will and accord, and in consideration of the care and kindness that said Hattie and Charles Ira had before that time bestowed upon her, and in further consideration that they should care for and support her as long as she lived.

The case was heard upon pleadings and proofs before Hon. Richard A. Watts, judge of the Hillsdale circuit, who found that the deed of Ann Carmichael to Hattie E. Disbrow and Charles Ira Carmichael was obtained by fraud and undue influence practiced upon her by the defendants Ira, Hattie, and Charles Ira, but felt compelled to deny relief to the complainants for two reasons:

1. Because he was not satisfied that the contract claimed to have been made between the father and mother as to their wills was established; and that such contract, if made out, being an oral one, "would be invalid and not enforcible; relating, as it did, largely to real estate, it would be void under the statute of frauds."

2. That the deed cannot be set aside because of undue influence and fraud in this suit, because the complainants have no such interest in the land in question as entitles them to relief; that, in order to vacate and set aside the conveyances complained of, proceedings must be taken in the interest and name of Ann Carmichael, or in the name of a guardian appointed to represent her interest.

He therefore dismissed complainants' bill without prejudice.

We fully agree with the circuit judge that the deed from Ann to Hattie and Charles Ira was procured by fraud and undue influence, and that Ann was not competent at that time to dispose of the land to any one.

We are further satisfied that the claim of complainants as to the contract is correct. We have no doubt from

the two wills and their terms, and the oral evidence connecting them, that the father and mother came to a mutual understanding and agreement as claimed by the complainants; that the wills were made for the express purpose of securing to complainants an equal undivided share of 90 acres of land, incumbered with the $500 bequest to Charles, Jr.; that the making of one will was an inducement to the making of the other, and that the contract and inducement of the father has been carried out and performed by his death with his will executed and standing as he promised; that the children all knew of these wills, and the arrangement and purpose under which they were made. They acquiesced in it. They took possession of their share of the real estate, and have ever since held and enjoyed their respective shares, except Hattie, who took her $1,000 in lieu of land.

The complainants were put off in the enjoyment of their own until the death of the survivor of their parents. The mother to-day holds the use of 60 acres of land, and had all the personal property of her husband, by virtue of her agreement to will the 40 acres owned by her to the complainants. The fact that she made an arrangement by which she divided the personal property among all the children, and took back notes for the use of the same during her life, does not alter her condition. She had the property, and disposed of it as she saw fit, and disposed of it equitably. It has passed equally into the hands of the children, where it naturally would have belonged at her death. The will and contract of the father having been performed on his part with her, the children having acquiesced in the contract, and had their full share, can these defendants, Ira, Charles Ira, and Hattie, now, in fraud of the complainants' rights, acquire this 40 acres at Ann's death?

We think not. If they can, it must be because some narrow

technicality stands in the way of justice. In the first place, the will of Ann stands. When she made the deed to Charles Ira and Hattie she was not mentally competent to destroy that instrument, even if the law would permit her to do so. There is no doubt but it is compe tent for a person to make a valid agreement binding himself to make a particular disposition of his property by last will and testament. *Faxton v. Faxon*, 28 Mich. 159; *Sword v. Keith*, 31 Id. 247; *DeMoss v. Robinson*, 46 Id. 62 (8 N. W. Rep. 712); *Mundy v. Foster*, 31 Id. 313, and note; *Johnson v. Hubbell*, 10 N. J. Eq. 322; *Van Duyne v. Vreeland*, 11 Id. 370, 12 Id. 142; Williams, Ex'rs (6th ed.), p. 14, and note, and pp. 162, 163.

But the defendants claim that the contract, resting partly in parol, is void under the statute of frauds, so far as it related to real estate.

It is to be remembered, however, that the contract on the part of the father has been fully performed, and that Ann Carmichael, the mother, has received and accepted the benefits of such performance. A court of equity, under these circumstances, will not permit her to rescind this contract. If this were an oral agreement to convey lands, there is performance enough shown on the part of the father, and acceptance by Ann, to authorize a decree for specific performance of such contract. And by the same principle that would govern in such a case, the performance of the contract in the present case upon the part of the father takes the agreement out of the statute of frauds. The non-fulfillment of this contract upon the part of Ann. Carmichael would be a fraud which equity will not allow. Therefore it will decree the performance of the agreement upon Ann Carmichael, or take such steps as shall be necessary to prevent her from violating her part of the contract in fraud of the rights of these complainants. The complainants are not proceeding in

this suit as heirs at law of Charles Carmichael, Sr., but as parties having a vested interest in this real estate under the contract of their father and mother, which agreement, having been fully performed by the father, will be enforced against the mother. They are therefore proper parties to this suit, and Ann Carmichael is a proper party defendant.

The decree of the court below will be reversed, with costs of both courts, and a decree entered here as prayed by complainants.

The other Justices concurred.