THOMAS H. KEAGLE AND JOSEPH J. WALSH, EXECUTORS,
ETC., v. HENRY D. PESSELL.

*Mortgage—Will—Contemporaneous agreements—Parol evidence.*

1. At the time of the execution of a mortgage conditioned in part
   for the payment of $4,500 to the legatees of the mortgagee,
   and as a part of the same transaction, the mortgagee made
   her will, by which she provided for the payment to certain
   legatees of legacies to the amount named in the mortgage, in
   ten equal annual payments after the death of herself and her
   husband, free from interest until due. And it is held that the
   mortgagee could not, by the revocation of the will, alter or
   annul her contract with the mortgagor as to the time of pay-
   ment of the $4,500, there having been no default on his part.

2. No reformation of the mortgage is necessary in a suit brought
   by the executors of a later will to foreclose it, but the mort-
   gagor may show the whole contract by proof of the execution
   of the first will.

3. Where the executors fail to produce a will after due notice, it
   is provable by a copy, shown to be such by parol evidence,
   and the execution of the will may be shown by the same kind
   of evidence.

Appeal from Branch. (Loveridge, J.) Argued April
15, 1892.   Decided May 13, 1892.

Bill to foreclose a mortgage.   Complainants appeal.
Decree affirmed.   The facts are stated in the opinion.

*William H. Lockerby* and *Campbell & Johnson*, for
complainants.

*F. A. Lyon*, for defendant.

MORSE, C. J.   The bill in this case is filed to fore-
close a certain mortgage given by the defendant to John
and Hannah Hill, executed April 2, 1873.   The time and

manner of payment in the mortgage was in the follow-- ing terms:

"Provided always, and these presents are upon the· express condition, that if the said party of the first part shall and do well and truly pay, or ᵥcause to be paid, to the said parties of the second part the sum of five hun-- dred dollars annually during the life-time of both or either of them, in semi-annual payments, to be paid two· hundred and fifty dollars on the first of April, and the same amount on the first of October, each year, during the life-time of either of them; and at the decease of both John Hill and Hannah Hill said annuity shall cease. But the party of the first part shall pay to the legatees of Hannah Hill the sum of four thousand five hundred dollars ($4,500), and on proof of decease of both parties, John and Hannah Hill, and the payment of said sum and annuities, this mortgage shall be· canceled and discharged from the records; and it is understood by both parties—that is, John and Hannah Hill and Henry D. Pessell—that the register of deeds for the county of Branch, on such proof of death of John and Hannah Hill, and the payment of said sum, is to discharge the same from the records."

Hannah Hill survived John Hill, and the complainants are executors of a will executed by her in England, January 4, 1887.

The mortgage was executed under the following cir- cumstances, as to which there is no dispute: John and Hannah Hill were at the time of the execution of this mortgage the joint owners of two pieces of land, 80 and 120 acres, the former situate in the township of Allen, Hillsdale county, and the latter in the township of Quincy, Branch county, in this State. They were also the owners of an estate in England, and were desirous of going there· to live. They were very friendly to the defendant, who had rendered them some service. They deeded these two farms to him, taking back this mortgage on the 120 acres, which farm was estimated to be worth $9,000. The Hills removed to England. John Hill died before

his wife, Hannah. She died August 20, 1890. The
annuity mentioned in the mortgage was paid up to the
date of Hannah's death. Hannah Hill made a will in
England on the 4th day of January, 1887, revoking all
former wills by her made, appointing the complainants
her executors, and directing in said will that the follow-
ing legacies be paid out of the moneys due from defendant
on this mortgage: To Emma Sherman, $500; John
Keagle, $1,000; Thomas Keagle, $1,500; Arthur Keagle,
$500; Mary Cooley, $500; and William Keagle, $500.
The will also stated that the testatrix was entitled to
$4,500, due from Henry D. Pessell, and secured by the
mortgage in question here, and "which sum is covenanted
to be paid by the said Henry D. Pessell after my death
and the death of my lately deceased husband."

The defense to this mortgage is that it is not due; that
at the time the deeds and mortgage were executed, and
as a part of the same transaction and agreement, a will
was executed by Hannah Hill, and also one by John Hill,
in which will of Hannah Hill it was distinctly stated
that the legacies were to be paid after her death, in
equal annual installments, for 10 years, without interest;
that this will was part of the same contract as the
mortgage, and must be construed with it, and made the
sum of $4,500 payable at the rate of $450 per year for
10 years, without interest. The court below found the
defense to be a good one, and dismissed complainants'
bill.

One Isaac W. Sheriff, who drew the deeds and mort-
gage, testified that he drew the wills of John and Han-
nah Hill, and saw them duly executed. He claims that
he kept the original drafts of both wills, and the drafts
were presented in the court below, and identified by him.
The original deeds and these drafts have been laid before
this Court and examined by us. The draft of the will

of John Hill is unimportant, but the draft of the will of Hannah Hill, speaking of this mortgage property, reads as follows:

*"First.* Of my estate in the town of Quincy, Branch county, State of Michigan, consisting of a certain mortgage on property in sa'd town executed by Henry D. Pessell to myself, dated April 2, A. D. 1873, for the sum of four thousand five hundred (4,500) dollars, to be paid after the death of myself and my husband to the persons hereinafter named in the way and manner as follows: The same to be free, and not subject to interest, until the time of payment that I shall hereafter name, that is to say: To Emma Sherman, of the town of Algansee, Branch county, Michigan, I give and bequeath from said estate five hundred dollars, to be paid in ten equal annual payments after the death of myself and husband.

*" Second.* To John Keagle, son of William Keagle, I give one thousand dollars, to be paid in ten equal annual payments after the death of myself and husband.

*" Third.* To Thomas Keagle I give the sum of one thousand (1,000) dollars, to be paid in ten equal annual payments after our decease, meaning myself and husband.

*" Fourth.* To William J. Keagle I give the sum of one thousand (1,000) dollars, provided he shall survive myself and husband, but, in case he should die before we die, then the same to go to his son Arthur, to be paid in ten equal annual payments after the death of myself and husband.

*"Fifth.* To Mary Cooley, of the state of Ohio, I give five hundred (500) dollars, to be paid in ten equal annual payments after the death of myself and husband.

*"Sixth.* To William Keagle, the son of William Keagle, I give the sum of five hundred (500) dollars, to be paid in ten equal annual payments after the death of myself and husband; the above bequests to be free from interest until due."

There is nothing in the record to dispute the testimony of Sheriff; nor can we find anything about the drafts of the wills or the deeds that militates against the truth of his statements. The reason for the making and keeping of these drafts is reasonably explained.

Pessell testifies that he understood that he was to have

10 years after the death of the survivor of the Hills in which to pay the $4,500, and without interest. We are satisfied that the wills were executed as testified to by Sheriff, and that the mortgage and the will of Hannah Hill, so executed, must be construed together as one contract.

The complainant's counsel state in their brief that they do not deny the well-settled proposition of law that—

"Contemporaneous writings, made between the same parties, referring in themselves to each other, and concerning the same subject-matter, should be construed together; nor do they deny that a will made for a valuable and sufficient consideration may be enforced in equity as a contract by one for whose benefit the same was made."

The chief contention of the complainants is that there is no equity in the defense, because the deeding of the two farms to defendant was without any consideration, and a mere gift; that the 80 acres, worth $3,000, was not covered by the mortgage, and was a free, pure gift, and that the other farm was worth $9,000; that the proceeds of the property he received, at 7 per cent. interest, would have realized defendant $840 per year,—$340 more than the annuity he was obliged to pay. It may be said in answer to this that the Hills made their own contract with Pessell, and Mrs. Hill herself dictated the terms of it. He was at liberty not to accept it. He chose to take the property, and to obligate himself to perform the conditions imposed upon him. He has so far faithfully kept his contract. There was a consideration, and a valuable one,—the payment of this annuity and the $4,500,—which was sufficient in law. There is no reason in law or equity why the adequacy of that consideration should be here inquired into. It was a consideration, without any fraud or undue influence, fixed by the Hills of their own free will.

It is also contended that the defendant should have asked in his answer, or in a cross-bill, for the reformation of the mortgage. The mortgage does not need any reformation. The defendant had only to show the whole of the contract, which he has done by the establishment of the execution of this will by Hannah Hill.

It is also claimed that this mortgage cannot be changed by parol evidence, and that the existence of this will is proven only by parol testimony. The contents of this will have been proven by secondary evidence,—the only evidence attainable,—and it is sufficient. The will was in the keeping of Hannah Hill. When she revoked it by her last will the presumption is that she destroyed it; but, whether she did or not, notice was given to her executors to produce it, and, upon their failure to do so, it was provable by a copy, and that the copy was a correct draft of the will was open to proof by parol testimony, as was also the execution of it.

Hannah Hill had the power to revoke this will, so far as the disposition of her property to others was concerned, but she could not by such revocation alter or annul her contract with defendant as to the time of the payment of the $4,500, when the defendant had fully performed the agreement upon his part. *Carmichael v. Carmichael,* 72 Mich. 76, 85, 86.

The decree of the court below is affirmed, with costs.

McGRATH, GRANT, and MONTGOMERY, JJ., concurred. LONG, J., did not sit.