Staunton.

WILLIAMS AND ANOTHER V. WILLIAMS.

September 19, 1918.

1. WILLS—*Joint Wills—Validity—Admission to Probate.*—The doctrine of the earlier authorities was that all joint wills were invalid; but it is now settled that such wills are good and may be admitted to probate successively upon the death of each testator as his separate will.

2. WILLS—*Joint Wills—Revocation.*—Generally speaking, wills are in their nature ambulatory or revocable, and cannot be made otherwise, even by the most express terms. This inherent quality of revocability belongs to all wills which do not partake of the nature of a contract. The mere fact that the will is made jointly by two or more testators does not affect the right of either to revoke the same at his pleasure, whether the revocation be made before or after the death of the others; but the fundamental reason for this rule is that every purely testamentary disposition of property is in the nature of a gift, and a different rule applies where a contract "is disguised under the name and appearance of a will." In the latter event the contractural nature of the instrument does not necessarily defeat its character as a will, but enables the party for whose benefit the contract was made to prevent, by resorting to a court of equity, a revocation which would destroy the compact or the trust created thereby.

3. WILLS—*Joint Wills—Probate—Specific Performance.*—While a court of probate cannot admit a joint or mutual will to probate as the will of one of the testators who has revoked the same on his part, it has long been well settled that a court of equity, by reason of its extraordinary power to enforce specific performance of contracts and to prevent fraud, may, in a proper cause, enforce the agreement, notwithstanding a revocation by one of the parties, by decreeing specific performance of the agreement, or by fastening a trust on the property in favor of the beneficiaries of the will revoked in violation of the agreement.

4. WILLS—*Joint Wills—Consideration for Contract.*—It is not essential that in order for a joint will to be mutual or reciprocal that each co-testator receive some advantage thereunder from the other.

5. WILLS—*Joint Wills—Consideration for Contract—Benefit of Third Party.*—Where reciprocal testamentary provisions are made for the benefit of a third party, there is a sufficient consideration for the contractural element in the will (assuming that the contract itself is established) to entitle the beneficiary to enforce · the same in equity.

6. WILLS—*Joint Wills—Evidence of Agreement and Consideration— Proof of Testamentary Compact.*—Undoubtedly the proof of the agreement and consideration must be clear and satisfactory; but proof of a testamentary compact may expressly appear in the language of the instrument, or it may be supplied by competent witnesses who testify to admissions of the testators, or it may result as an implication from the circumstances and relations of the parties and what they have actually provided for by the instrument. Direct evidence is not necessary.

7. WILLS—*Joint Wills—Evidence of Agreement and Consideration— Proof of Testamentary Compact—Case at Bar.*—In the instant case, the situation of the parties with reference to the respective lands devised, their relationship to the beneficiaries, their statements to the witnesses, taken with the provisions of the will itself, leave little room to doubt that the division of the property was the result of a mutual agreement between the co-testators, husband and wife, which, at the death of the wife, became fully executed on her part and irrevocable by the husband.

Appeal from a decree of the Corporation Court of city of Bristol. Decree for complainant. Defendants appeal.

*Affirmed.*

The opinion states the case.

*White, Penn & Penn* and *Hutton & Hutton,* for the appellants.

*L. P. Summers,* for the appellee.

KELLY, J., delivered the opinion of the court.

This is a suit in the nature of a suit for specific performance, brought by one of the beneficiaries under a joint will to enforce the provisions thereof in her favor. The joint testators were Thomas Pippin and Polly Pippin, his wife. The complainant in the suit, the appellee here, is their daughter, Nancy K. Williams, and the active defendants, the appellants here, are her children, Thomas E. and Albert Williams.

The relief prayed for was granted, and the first assignment of error complains of an interlocutory decree overruling a demurrer to the amended bill upon which the cause was heard. The case, as substantially stated therein, was as follows: That Thomas Pippin owned a tract of 120 acres of land, Polly Pippin, his wife, a tract of sixteen acres, and the two, jointly, a third tract of ten acres; that in March, 1899, the testators, both being then advanced in years, mutually agreed upon a testamentary disposition and division to be made of this property, whereby Polly Pippin was to give all of her lands to Albert K. and Thomas E. Williams, and in consideration of this disposition of Polly Pippin's lands, Thomas Pippin was to give his land (with the exception of three and one-half acres given to Thomas E. Williams) to Nancy C. Williams and another daughter, Laura Henderson and her children; that, accordingly, Thomas Pippin and Polly Pippin executed their joint will, devising their lands pursuant to this agreement; that Polly Pippin died in 1911, and the will was admitted to probate as to her in 1913; that in the meantime, on August 2, 1912, Thomas Pippin, who survived his wife and was then about eighty-three years of age, conveyed to Thomas E. and Albert K. Williams all the lands embraced in the joint will which had been devised therein to Nancy C. Williams and Laura Henderson; that while the paper jointly executed by Thomas and Polly Pippin was called a will by the scrivener whom they secured to assist them in drafting the same,

it was, in fact, a mutual agreement as to the disposition of their property which Thomas Pippin did not have the power to disregard.

It was also alleged that Thomas Pippin was mentally incompetent to make the deeds, and that the same were procured by undue influence exerted over him, but these allegations are not now material to the controversy.

The demurrer was properly overruled. The doctrine of the earlier authorities was that all joint wills were invalid (Schouler on Wills, section 456; 40 Cyc. 2112); but it is now settled that such wills are good and may be admitted to probate successively upon the death of each testator as his separate will. 40 Cyc. 2112; *Davis Will Case,* 120 N. C. 9, 26 S. E. 636, 38 L. R. A. 289, 58 Am. St. Rep. 771; *Ginn* v. *Edmundson,* 173 N. C. 85, 91 S. E. 696. There is no difference in this respect between a joint will which contains mutual and reciprocal provisions and one which does not; either is recognized by the probate courts. There is an important difference, however, in respect to the power of revocation. Generally speaking, wills are in their nature ambulatory or revocable, and cannot be made otherwise, even by the most express terms. This inherent quality of revocability belongs to all wills which do not partake of the nature of a contract. The mere fact that the will is made jointly by two or more testators does not affect the right of either to revoke the same at his pleasure, whether the revocation be made before or after the death of the others; but the fundamental reason for this rule is that every purely testamentary disposition of property is in the nature of a gift, and a different rule applies where a contract "is disguised under the name and appearance of a will." 2 Minor's Inst. (4th ed.) 1021; *Hale* v. *Hale,* 90 Va. 728-730, 19 S. E. 739. In the latter event the contractural nature of the instrument does not necessarily defeat its character as a will, but enables the party for whose benefit the contract was made to

prevent, by resorting to a court of equity, a revocation which would destroy the compact or the trust created thereby.

"Under the head of joint or mutual wills, our courts often discuss this irrevocable quality of a will under those exceptional circumstances which import a valuable and reciprocal consideration. And it is here that courts of equity assume the difficult problem of enforcing a specific performance, so to speak, of the testamentary disposition, or rather of a testamentary compact involving the making of a joint or mutual will in accordance with the mutual agreement of the parties." Schouler on Wills, section 455.

"While a court of probate cannot admit a joint or mutual will to probate as the will of one of the testators who has revoked the same on his part, it has long been well settled that a court of equity, by reason of its extraordinary power to enforce specific performance of contracts and to prevent fraud, may, in a proper cause, enforce the agreement, notwithstanding a revocation by one of the parties, by decreeing specific performance of the agreement, or by fastening a trust on the property in favor of the beneficiaries of the will revoked in violation of the agreement." 40 Cyc. 2117; *Carmichael* v. *Carmichael,* 72 Mich. 76, 40 N. W. 173, 1 L. R. A. 596, 16 Am. St. Rep. 528; *Bower* v. *Daniel,* 198 Mo. 289, 95 S. W. 347; *Edson* v. *Parsons,* 155 N. Y. 555, 50 N. E. 265.

We have no difficulty in deciding that the facts alleged in the amended bill, if true, entitle the complainant to the relief sought.

The second assignment of error challenges the correctness of the final decree whereby, after all the proof had been taken, the court adjudged that the complainant was entitled to the land devised to her in the will, directed that she recover the possession thereof from the defendants, required them to execute and deliver to her a release deed

therefor, and provided for a commissioner's deed for that purpose in case they should not comply with this requirement within thirty days.

There is a contention not very material to the merits of the case but insisted upon in the brief of counsel, that the decree is erroneous because there was no evidence to show which of the deeds of August 2, 1912, if either, covered the real estate devised by the will to the appellee, or which of the appellants, if either, was in possession of the same, or any part thereof. Of this contention it is sufficient to say that while there was no proof of these facts none was necessary, since they were substantially admitted by the fourth paragraph of the joint answer filed by the appellants.

Upon the really contested question in the case, it is contended by counsel for the appellants that the instrument in question in this case is a "joint will pure and simple," and that in order for a "joint will pure and simple," and that in order for a "joint will to be mutual or reciprocal, it is absolutely essential that the co-testators receive some advantage thereunder from the other."

The usual instances of mutual will are those in which the mutuality rests upon some benefit to be directly derived from the instrument by the surviving testator, but it is manifest that this feature is not necessary to the mutuality which the authorities recognize as the basis for a binding testamentary compact between two testators. In a note to section 455 of Schouler on Wills, it is said: "One promises to make a will of all his property in favor of a second person who, in consideration thereof, agrees to make a similar will in favor of the first; the advantage thus to accrue being to such of the two as may happen to survive the other. Or the joint consideration may relate to a disposition in favor of third persons; however, here courts are not so well disposed to enforce the cumbrous arrangement. In short, parties may agree between themselves to execute mutual

and reciprocal wills, which, though remaining revocable in a sense, become, upon the death of one, fixed obligations of which equity will assume the enforcement on an ultimate beneficiary's behalf (having no full remedy at law) if the survivor attempts to impair them." Citing *Edson* v. *Parsons, supra.*

It is true that in the case of *Edson* v. *Parsons,* cited above, the court held that the alleged testamentary compact was not established, and that the case of *Frazier* v. *Patterson,* 243 Ill. 80, 90 N. E. 216, 27 L. R. A. (N. S.) 508, 17 Ann. Cas. 1003, cited in the opinion of the corporation court, as set out below, was one in which the instrument involved made certain provisions for the benefit of the surviving testator as well as for the ultimate beneficiary; but both of these cases may be safely regarded as authority for the proposition that where reciprocal testamentary provisions are made for the benefit of a third party, there is a sufficient consideration for the contractural element in the will (assuming that the contract itself is established) to entitle the beneficiary to enforce the same in equity. This principle is distinctly recognized and succinctly stated in the quotation from *Deseumeur* v. *Rondel,* 76 N. J. Eq. 394, 74 Atl. 703, embodied in the opinion of the trial court and incorporated herein.

The trend of modern decision favors the recognition and enforcement of contractural features of joint wills. See note to *Robertson* v. *Robertson,* 136 Am. St. Rep., page 598.

Undoubtedly the proof of the agreement and consideration must be clear and satisfactory (Schouler on Wills, section 454; 4 Cyc. page 2118-c; *Swann* v. *Housman,* 90 Va. 815, 20 S. E. 830) ; but in the instant case we think this condition is fully met. Proof of a testamentary compact may expressly appear in the language of the instrument, or it may be supplied by competent witnesses who testify to admissions of the testators, or it may result as an implica-

tion from the circumstances and relations of the parties and what they have actually provided for by the instrument. Direct evidence is not necessary (40 Cyc. 2118). Here, the situation of the parties with reference to the respective lands devised, their relationship to the beneficiaries, their statements to the witnesses Crumley, Ingle and Bradley (disregarding entirely any consideration of the testimony of the appellee, whose evidence we think was not admissible), taken with the provisions of the will itself, leave little room to doubt that the division of the property was the result of a mutual agreement between the co-testators which, at the death of Polly Pippin, became fully executed on her part and irrevocable by the survivor. The devise of the property of Polly Pippin to the appellants was an entirely sufficient consideration for the agreement on the part of Thomas Pippin to devise his property to the appellee and others.

This conclusion reaches the clear natural equity of the particular case and is in harmony with those authorities on the subject which most commend themselves to us.

The judge of the Corporation Court of the city of Bristol delivered a written opinion in this case which was made a part of the record, and in which he presented the facts and the law in a most satisfactory manner. Omitting certain portions thereof, which in view of the foregoing discussion need not be inserted here, we quote from that opinion as follows:

"Under date of March 28, 1899, Thomas Pippin and Polly Pippin, his wife, executed under seal as their will the joint writing filed as a part of the original bill as Exhibit A. At the time they were from sixty-five to seventy-five years of age. Nancy C. Williams, sometimes called Kate Williams, the complainant, is their daughter. She has been a widow for many years. Thomas E. Williams and A. K. Williams, the defendants, are their grandsons, and sons of com-

plainant. These are the only parties before the court. By their joint will the testators make a joint disposition of their separate lands. That is, all of the devisees are joint, whereas a part of the land was owned by Thomas Pippin and a part thereof by Polly Pippin, and they each owned a moiety of a ten-acre tract. The land devised to A. K. Williams was in fact the separate property of Polly Pippin. A moiety of ten acres which was devised to Thomas E. Williams was also hers. But all of the land which was thus jointly devised by them to complainant was the separate property of Thomas Pippin. This will was written and attested by Rev. T. J. Crumley and Rev. A. H. Ingle, life-long friends of the testators, and was placed with Rev. Ingle as custodian, who kept it until it was probated March 7, 1913, as the last will of Polly Pippin, she having died on April 6, 1911, without any revocation thereof by either party at the time of her death. Nancy Williams served these old people faithfully and as a daughter should until some months prior to the death of her father on February 23, 1913. About four months prior to his death Thomas Williams and wife moved into the house with their grandfather, and after that complainant did not go about her father, not even during his last illness, she claiming that she could not get along with her daughter-in-law. For a year and probably longer before his death, Thomas Pippin took a dislike for complainant because of her association with one Grant Nunley—not that their relations were in any sense illegal or improper—but it seems that for some reason he did not like him. He, therefore, formed a declared purpose to make a different disposition of his lands if he could do so, and even inquired of Mr. Ingle whether there was any clause allowing either party to revoke the will, and was informed in the negative. Under date of August 2, 1912, Thomas Pippin executed the deeds, filed as a part of the bill as Exhibit B and Exhibit C, to Thomas E.

Williams and A. K. Williams, respectively, thereby convey-ing to them all of the land owned by him in his own right, thus defeating or attempting to defeat the joint will as to all of his property, and defeating all provision therein in favor of complainant. Both deeds provide that they are not to be effective until after the death of the grantor, and he reserves full control and possession of the land for the remainder of his life. A vendor's lien is retained in both deeds to secure the payment of small amounts to the beneficiaries therein named within a specified time after the death of the grantor. Complainant was to be paid $100 without interest, in two instalments of $50 each, under the deed to Thomas E. Williams, in one and two years after possession was acquired by him on the death of Thomas Pippin. Complainant refused a tender of the money after her father's death. The deed to Thomas E. Williams has this additional provision: 'The party of the second part is to support and take care of the party of the first part during the remainder of his life.' Thomas E. Williams does not sign the deed so as to make this clause a covenant on his part. However, afterwards, on October 23, 1912, he and his wife moved into the home with Thomas Pippin. None of the amounts mentioned in the deeds were paid until some time after the will was probated and most of them after this suit was brought. It is not shown that defendants or either of them knew the contents of the will at the time the deeds were made nor until after the death of Thomas Pippin. A. K. Williams says that he had heard his grandparents state that they had made a will. He was present and heard the will read when it was probated. Thomas E. Williams was present when Mr. Pippin gave Mr. John J. Stuart the information to prepare the deeds. Mr. Stuart, a witness for defendants, states that he understood Mr. Pippin was endeavoring by the deeds to dispose of all of his land, and his statement in part is: 'I think he stated to me that he and his wife had

already made a will at the time I prepared these deeds. I think the will might be called a mutual will,' etc.

"In their answer defendants do not claim to be purchasers. They both say that they in no way induced their grandfather to execute the deeds. A. K. Williams says he did not even know of the deeds until about a month before his grandfather died. Nor does Thomas E. Williams in the answer claim that the deed to him should stand as against complainant on account of care, attention or services rendered to his grandfather, that 'no charge was made for this.' The answer, in substance, states that whatever was done by Thomas Williams and wife in this regard was all prompted by love and affection. Their defense is grounded alone upon the claim that their grandfather had the absolute right to revoke the joint testamentary disposition of all of the land of both testators so far as his property was concerned, and that he did so by the deeds of August 2, 1912.

"It is averred in the amended bill and admitted in the answer that defendants are each now holding title and possession under the joint will of the respective parcels of land thereby devised to them and which was owned by their grandmother, Polly Pippin. They claim that in all other respects the joint writing has been revoked, but that it is a valid disposition to them, respectively, of the tracts and interests belonging to her.

"As to the situation of the parties and circumstances at the execution of the joint testamentary writing, Mr. Crumley testifies that he wrote the will and that Mr. Ingles assisted in the wording thereof, and further states: 'We only wrote as they dictated the division of their land,' naming the parties; and in another answer his reply is: 'They said they wished the division made in that way—both of them agreed together there, as I understood it—perfectly agreeable to distribute the land as mentioned in the will.

They dictated the entire will to us.' Complainant testified in a general way that the testators told her that they had entered into a contract for a division of their property as was done by the will. John O. Bradley, a disinterested and reliable witness as well as a close friend of the testators, testified to a conversation with Thomas Pippin regarding a division of the property between their children and grandchildren, which conversation took place after the will was made, and in which Mr. Pippin 'told me that they had fixed up the business and divided the property as they wanted it divided; I don't know what year it was, but he said, we have fixed up this business, and we have laid it off the way we want it.' * * *

"The instrument involved in the case at bar is a joint and mutual will. It does not recite in terms that it is mutual. Can the court say that Thomas Pippin intended not to be bound by uniting under seal in the execution of the paper? It means nothing if it does not mean that the devises of Polly Pippin's separate property to defendants was the consideration for the devise of Thomas Pippin's separate property to complainant as described in the third clause thereof. If what the parties did is in fact mutual, if the one is the consideration for the other, will their saying so make it any more effective?

"In *Frazier* v. *Patterson,* 243 Ill. 80, 90 N. E. 216, 27 L. R. A. (N. S.) 508, 17 Ann. Cas. 1003, the form and language of the instrument involved as well as the situation of the testators as to the ownership of their property, and the principles of equity invoked and applied, were all substantially the same as in the case at bar. In that case the will did not say that it was mutual, but it was so held. The sole issue there to be decided was: 'Does the joint will itself, on its face, sufficiently prove a compact or agreement to make a will mutually disposing of their property, each for and in consideration of the will of the other?'

"The court deduces from the cases there reviewed and cited, and as resting 'upon sound, equitable grounds,' the following proposition of law:

" 'That such wills constituted a mutual contract between the parties which could not be rescinded by the survivor after the death of one on the theory that the first that dies carries his part of the contract into execution.'    17 Ann. Cas. 1005.

"It was there expressly contended that in order to sustain the will as a compact, 'that proof *aliunde* the will should be introduced, showing that the mutual will was the result of a contract or mutual understanding that such will should be made.'    In answering this claim the court there further declared:

" 'There are cases which appear to support this contention, but it will be found that this rule is more particularly applicable to mutual wills rather than to those which are both joint and mutual.    If two persons make wills, each devising his property to the other, there is no necessary inference that the wills were the result of any mutual or reciprocal agreement or understanding.    Such wills might be executed without either party knowing that the other had executed his will; but where the parties execute their wills by the same instrument, it is not possible that such course could be adopted without some previous understanding or agreement between them.    Each would necessarily know what disposition the other had made of his property. This inference is especially strong where the parties are husband and wife, and where they have a common interest in the welfare of the devisees.    *  *  *  If evidence of a mutual compact is necessary in such case, that evidence is afforded by what the parties did.    We cannot see how the situation would be any different if witnesses had testified that they heard this husband and wife discuss what disposition they would make of their respective estates, and that

they agreed with each other that they would make a joint will such as they did make. The fact that they made such will is satisfactory proof to our minds that it was done in accordance with their mutual compact to dispose of their property in this manner.' 17 Ann. Cas., pages 1005-6.

"In *Bower* v. *Daniel,* 198 Mo. 289, 95 S. W. 347, the joint will did not recite any consideration or in terms say that it was mutual, but the court likewise so held. Among other things it was declared 'that but for these mutual bequests the parties would, in all probability, have made separate wills.' 198 Mo. 321, 95 S. W. page 357. In that case the surviving testator attempted to defeat the joint will in part by a subsequent will as to some of his property, and in part, as in the case at bar, by making deeds reserving a life estate. After an exhaustive discussion (198 Mo. 328, 95 S. W., at page 359), the court concludes: 'There can be no question, we think, that the testator executed those voluntary conveyances and made the subsequent will for the purpose of defeating the joint will, which acts were, in our opinion, ineffective for that purpose.'

"Let us look at this case in a practical way from another angle. Suppose defendants should make a written contract to sell the land claimed by complainant and upon suit for specific performance their proposed vendee should answer that the title is not merchantable, that he finds on record the joint will which has already been probated as the will of Polly Pippin wherein it appears to have been agreed that the land was to go to complainant; under this state of facts, although the beneficiary was not before the court, it was held in the case of *Deseumeur* v. *Pendel,* 76 N. J. Eq. 394, 74 Atl. 703, that such a title was not good and the vendee could not be forced to take it. On page 402 of 76 N. J. Eq., and page 707 of 74 Atl., the law applicable is stated thus:

" 'It is undoubtedly the law that if two people, upon suffi-

cient consideration, agree to do something for the benefit of a third, such contract or agreement may be enforced as against the two contractors. It is equally well settled that, upon legal consideration, parties may agree to dispose of their property at the time of their deaths in certain specified ways, or to certain specified people.'

"The instrument under consideration was very similar to the one at bar, and the court reviews all of the authorities, and although the will purported to be mutual the court declined to characterize it at all, because immaterial, saying at page 403 of 76 N. J. Eq., and at page 707 of 74 Atl., whether the paper, which was also executed by husband and wife, 'was a will or not, it is perfectly clear that it expressed the understanding and agreement between those people at the time concerning the disposition of their property after their death. If, therefore, it was founded upon sufficient consideration, a court of equity would sustain the same and decree its enforcement' in behalf of the 'persons in whose favor it runs.' 76 N. J. Eq. 405, 74 Atl., page 708.

"See also *Roberston* v. *Robertson*, 94 Miss. 645, 47 South. 675, 136 Am. St. Rep. 589, and exhaustive note, pages 592-605, wherein the doctrine of the foregoing cases is also approved.

*       *       *       *       *       *

"Defendants rely upon the statute of frauds and in support of this claim cite *Hale* v. *Hale*, 90 Va. 728, 19 S. E. 739. There, two sisters made separate will in favor of each other, the wills not referring to each other nor to any contract. That case is wholly unlike the case at bar. The will was revoked in the lifetime of both by the marriage of one of the sisters. Here both parties sign under seal the same instrument which is complete in itself either as a will or as a compact, and which was in no way revoked during the life of both parties, and which was carried into execution on one side by the death of Polly Pippin and title and pos-

83

session accepted thereunder by defendants so as to render the statute inapplicable.

"Therefore, it must be concluded, that complainant is entitled to the land described in the third clause of the joint writing filed with the original bill; that defendants should surrender possession thereof to her, and they should release and convey to her by proper deed all their respective title or interest thereto by virtue of the deeds of August 2, 1912; and that if they fail or refuse to make such conveyances whithin a reasonable time, the decree should further provide that a commissioner be appointed to make same for them, using the same description as used in the third clause of Exhibit A. See *Milton* v. *Kite,* 114 Va. 256-261, 76 S. E. 313."

We may add that we do not attach any importance to the fact that the instrument in this case was under seal. The consideration was supplied by the mutuality of the devises, and the signature of the parties was sufficient to take the case out of the statute of frauds. Whether the fact that a seal was affixed to the instrument dispenses with the necessity of proving a consideration, is a question which was discussed in the briefs and in the opinion of the trial court, but which, in our view, need not be decided here.

We find no error in the decrees complained of, and they are affirmed.

*Affirmed.*