# FRANK G. MOSLOSKI v. A. W. GAMBLE.[1]

March 9, 1934.

No. 29,745.

[1]Reported in 253 N. W. 378.

Leo J. Seifert, for appellant.
E. H. Nicholas, for respondent.

DIBELL, Justice.

Actions to enforce the provisions of mutual wills made March 4, 1913, by John Mosloski and Kate Mosloski, his wife, the parents of plaintiff, in which he was a beneficiary. There were findings for plaintiff, and the defendant, A. W. Gamble, as administrator of the estate of John Mosloski, appeals from the order denying his motion for a new trial.

Mutual wills are those in which the testators make mutual or reciprocal bequests or devises in favor of the other. They may be in one instrument or in as many as there are testators. A joint will may be mutual and reciprocal in its terms, and it frequently is. In 40 Cyc. 2110, reciprocal wills, which may be separate or joint in form, are defined:

"Mutual or reciprocal wills are those in which two or more persons make mutual or reciprocal provisions in favor of each other, as by providing that the property of one dying first shall go to the survivor or survivors; and this may be either where all of them unite in the execution of one instrument, or where several instruments are executed by each of them separately."

The definition given is generally acceptable to the text writers, who express their understanding of mutual and reciprocal wills in varied phraseology and always with substantially the meaning given. Dunnell, Minn. Pr. Law, § 146; 1 Alexander, Wills, §§ 69-88; Gardner, Wills (2 ed.) p. 75; 1 Jarman, Wills (7 ed.) p. 42; 1 Page,

Wills (2 ed.) §§ 84-88; Rood, Wills (2 ed.) § 70; 1 Schouler (6 ed.) §§ 716-727; Theobald, Wills (8 ed.) pp. 17-18; 1 Williams, Executors (12 ed.) pp. 6-7, 78, 115; 1 Woerner, Am. Law Adm. (3 ed.) § 37; 1 Underhill, Wills, pp. 18-21. Mutual or reciprocal wills came into the law late and received questioning consideration and tardy recognition. No such will has had construction in this court. Dunnell, Minn. Dig. (1932 Supp.) § 10207a.

That two wills are made concurrently does not establish them as mutual wills. Edson v. Parsons, 155 N. Y. 555, 50 N. E. 265; Williams v. Williams, 123 Va. 643, 96 S. E. 749. The wills themselves by appropriate language used may show that they are mutual, each containing provisions reciprocal to those of the other. Surrounding circumstances and parol evidence may be introduced to show the mutuality. That a contract for mutual wills was here made upon a sufficient consideration appears from these facts and circumstances:

The plaintiff is the son of John Mosloski and Kate Mosloski. John and Kate owned 480 acres of farm land in Martin county, this state. Mrs. Mosloski owned 320 acres thereof at the time of their mutual wills on March 4, 1913. Mr. Mosloski owned 120 acres. He or he and his wife in common had a claim to an additional 40, owned by Mr. Mosloski's father under an arrangement whereby they were to care for and support him during his life, and at his death they were to have the 40 or John Mosloski was to have it— it matters not which. The father died, and the 40 went, under the contract, either to John Mosloski or to him and his wife. Mr. and Mrs. Mosloski had three sons and five daughters. The wills, on the date mentioned, were made pursuant to an oral agreement between the parties that each would devise to the other a life estate in such party's real estate with remainder to the three sons. These wills consummated the agreement of the parties. Each was a consideration for the other. The parties thoroughly understood what they were doing. It was their wish that their three sons should have, in quantities of 160 acres each, the property which Mr. Mosloski owned and the property Mrs. Mosloski owned. The particular 160-acre tract each son was to have was described in the wills. The

daughters were provided for by bequests of money. The wills were made and executed at the same time, drafted by the same attorney, and witnessed by the same witnesses. Mr. and Mrs. Mosloski went to their attorney and explained to him just what they wanted and gave him the descriptions of their properties. He drew their wills to conform to their expressed wish as to the disposition.

On August 13, 1924, Mrs. Mosloski died. Her will was probated. Her husband was one of the executors. By the decree of distribution he received a life estate in the real estate owned by his wife, and each of the sons received a specific portion by way of remainders. The plaintiff received 120 acres. The will made by John Mosloski devised him the 40 now in question; if he gets this 40 he gets the 160 acres as his father and mother intended when they made the agreement for mutual wills and executed them pursuant to their agreement.

On May 16, 1925, John Mosloski made a second will in which he revoked his 1913 will. This second will gave one of his daughters an additional $500. It was expressed to be given because of the dutiful care she had given her mother during her illness. It gave plaintiff and a brother as tenants in common an 80-acre tract, which included the 40 now in controversy. In 1926 he remarried. And in 1932 he died. Advised that the marriage revoked his wills, the probate of his estate as that of an intestate was started, and the defendant is the duly appointed administrator.

Defendant raises the following propositions:

(a) The court erred in allowing proof and finding that John Mosloski made a mutual will without the production of the original; (b) it was error to hold that the will of 1913 could not be revoked; (c) it was error to find an agreement between plaintiff and John Mosloski under which the 40 could be claimed and the claim enforced in this action in equity; (d) it was error not to find that plaintiff was estopped to claim the 40 either under the mutual wills or under the agreement with the father.

A carbon copy of John Mosloski's will of March 4, 1913, was received in evidence over the objection that it was incompetent, irrele-

vant, and immaterial; no proper foundation laid. There was no error in the ruling. The foundation was ample. The attorney who drew the mutual wills and also the second will of John Mosloski testified, as well as his stenographer who typed the wills. From their testimony it appeared that the practice of that attorney was to make and preserve carbon copies of all wills drawn and executed in his office; that the carbon copies of these three wills, offered in evidence, were taken from his files and were true copies of the three wills mentioned. There was no objection to the copy of the second will so offered; and as to Mrs. Mosloski's will no real objection could be offered, for it had been admitted to probate and a certified copy, exhibit E, was stipulated in evidence. The fact that in his second will John Mosloski revokes prior wills is some indication that he destroyed such. Keagle v. Pressell, 91 Mich. 618, 52 N. W. 58. But, as the trial court observed, this is not an action based on the wills, but upon a compact or agreement "of which the will is but evidence." Ample foundation was laid for secondary evidence of John Mosloski's will.

John Mosloski's marriage revoked his will of 1925. 2 Mason Minn. St. 1927, § 8742. It is for the probate court in the first instance to determine whether the will is revoked. Outside of its jurisdiction in proving wills, the probate court will do nothing in granting to a beneficiary relief which only a court of equity can give. What a court of equity does is not actually to revoke the will but to fasten upon the property which the survivor in the case of mutual and reciprocal wills, or in case of a joint will, has agreed to devise to a beneficiary; and impressing the property with a trust, as it does in its judgment, it completes its work by decreeing the property to be in the beneficiary in fee, if that be the estate which was to be devised. Appellant does not deny that if a husband and wife, pursuant to a compact, make mutual and reciprocal wills to the survivor for life with the remainder to their children and one dies and the survivor takes the benefit of the provisions of the will of the spouse, such survivor cannot by will or otherwise deprive the children of the property which by the compact and the mutual wills was to go to them. The law seems well established. Frazier v.

Patterson, 243 Ill. 80, 90 N. E. 216, 27 L.R.A. (N.S.) 508, 17 Ann. Cas. 1003; Anderson v. Anderson, 181 Iowa, 578, 164 N. W. 1042; Barker v. Syfritt, 147 Iowa, 49, 125 N. W. 998; Warwick v. Zimmerman, 126 Kan. 619, 270 P. 612; Lewis v. Lewis, 104 Kan. 269, 178 P. 421; Carmichael v. Carmichael, 72 Mich. 76, 40 N. W. 173, 1 L. R. A. 596, 16 A. S. R. 528; Wanger v. Marr, 257 Mo. 482, 165 S. W. 1027; Bower v. Daniel, 198 Mo. 289, 95 S. W. 347; Edson v. Parsons, 155 N. Y. 555, 50 N. E. 265; Morgan v. Sanborn, 225 N. Y. 454, 122 N. E. 696; Brown v. Webster, 90 Neb. 591, 134 N. W. 185, 37 L.R.A. (N.S.) 1196; Stevens v. Myers, 91 Or. 114, 177 P. 37, 2 A. L. R. 1155; Taylor v. Wait, 140 Or. 680, 14 P. (2d) 283; Larrabee v. Porter (Tex. Civ. App.) 166 S. W. 395; Williams v. Williams, 123 Va. 643, 96 S. E. 749; Doyle v. Fischer, 183 Wis. 599, 198 N. W. 763, 765, 33 A. L. R. 733. In some of these cases a joint will was involved, and not mutual and reciprocal wills. That is not important except as affecting the *quantum* of proof of the compact or agreement pursuant to which the wills were made. In Doyle v. Fischer, 183 Wis. 599, 606, 198 N. W. 763, 33 A. L. R. 733, it is said:

"It should be borne in mind that it is the contract and not the will that is irrevocable. The authorities generally hold that the will may be revoked, but the contract stands and will be enforced by equity if it be a valid contract and such enforcement is necessary for the prevention of fraud."

In Menke v. Duwe, 117 Kan. 207, 230 P. 1065, 1070, Justice Burch says:

"A single instrument may have a double aspect—a will contractual in character, or a contract testamentary in character. As will it is revocable. As contract it is enforceable, if broken by revocation as will. Unless there be fraud, or a contract broken by revocation, there is nothing which equity may use as a basis of redress for revocation, no matter what the form of the revoked will, whether described as joint, or joint and mutual, or otherwise." See also Rastetter v. Hoenninger, 214 N. Y. 66, 108 N. E. 210.

In the instant case the wills themselves, the situation of testators, and the testimony of the lawyer who drafted them convincingly

establish the compact or agreement that plaintiff was to have this 40 as provided in John Mosloski's will. And plaintiff is entitled to specific performance thereof.

Irrespective of what has been said, the plaintiff could maintain his right to this 40. After making the wills of March 4, 1913, plaintiff and his brothers continued working on the land of their parents. Before the mother died the son Joseph received a deed to the 160 acres devised to him in the mutual wills. Plaintiff continued on the farm after the mother's death and after the father made the second will. He assisted his father not only in the work of farming but in the details of his business, as the father was unable to write, and rendered such domestic and personal services as could not well be paid in money, under the promise that he was to have by will or descent this specific 40 acres. His father assisted him in selecting a building site thereon and saw him build a substantial foundation there. The evidence clearly sustains the finding of a contract of which equity will grant specific performance after the death of the father. The cases are cited in 6 Dunnell, Minn. Dig. (2 ed. & Supp.) § 10207. The rights of plaintiff cannot be enforced in probate court. Enforcement must be in the district court. Simonson v. Moseley, 183 Minn. 525, 237 N. W. 413; Happel v. Happel, 184 Minn. 377, 238 N. W. 783, 786.

Appellant seeks to estop plaintiff from claiming the land because of his signing the petition for the probate of his father's estate and having taken a lease from the administrator of 80 acres of the farm of which this 40 is a part. No possible reason for predicating an estoppel can be found in the fact that plaintiff petitioned for the appointment of an administrator of his father's estate. He was not a lawyer. He had been advised by the probate judge that his father's marriage revoked his wills. And, as above stated, his remedy was to be had in the district court and not in the probate court. Plaintiff had this 40 and another 40 under oral lease from his father when the father died in March, 1932. His explanation is that when, during the summer, he received information that his sisters were to try to get the growing crop away from him, he was misled into believing that he might not be able to maintain his

rights; so, to assure himself of the crop he had raised, he took the lease. The lease was signed on July 29, 1932. This may have amounted to an admission in a weak way that he had no interest in the property; but there was no element of estoppel. Nobody relied upon or was prejudiced by what he did in taking the lease. In fact the estate gained by it, and if he was entitled to enforce a specific right under the mutual will or the agreement with his father, it was not taken away by his taking a lease. Trebesch v. Trebesch, 130 Minn. 368, 153 N. W. 754.

*PER CURIAM.*

For the reasons given in the foregoing opinion, prepared by the late Justice Dibell, and in accordance with the views of the court, the order appealed from is affirmed.

