## Richmond

VIRGINIA SUTTON SALLEY, et al.

v.

CHARLES SUTTON BURNS, et al.

June 8, 1979.

Record No. 771257.

Present: All the Justices.

George M. Warren, Jr. (Warren, Bowie & Bressler, on briefs), for appellants.

Benjamin F. Sutherland for appellees.

COMPTON, J., delivered the opinion of the Court.

In this chancery proceeding, we must construe a joint will which affects the title to certain Virginia real estate.

In 1937, one of the testators, D. B. Sutton, acquired by deed a tract of land in Russell County near Lebanon containing approxi-

mately 140 acres. At the time, Sutton was married to appellee Sarah Belle Sutton, the other testator and one of the plaintiffs below. In 1950, the will in issue was executed in Miami, Florida. Mrs. Sutton was a native of Russell County but the couple had lived in Florida for many years. In 1955, Mr. Sutton died, still owning the 140-acre tract. The joint will was promptly probated in Florida and a copy was subsequently recorded in the clerk's office of the court below. Sutton was survived by his widow and their two adult children, appellant Virginia Sutton Salley, a defendant below, and Martha Louise Sutton Oswald, both Florida residents.

In 1967, the widow conveyed all but five acres of the 140-acre tract in fee simple to her nephew, Charles Sutton Burns, the other plaintiff below. Subsequently, Mrs. Salley claimed an interest by virtue of the will in the property conveyed to Burns and in the five acres retained by her mother. Thereafter, Mrs. Sutton and Burns filed this suit in 1972 against Mrs. Salley, joining her husband, George Salley, a Miami attorney, as a party defendant.

Relying on the will, the plaintiffs sought removal of an alleged cloud from the title to the real estate and asked the court to quiet the title of the plaintiffs to the respective tracts of land. With her answer denying that plaintiffs were entitled to the relief sought, Mrs. Salley, also relying on the will, filed a cross-bill seeking to have the deed from her mother to Burns set aside in its entirety, "or at least to the extent that it purports to convey to the grantee therein any greater interest than an estate for the life of . . . Sarah Belle Sutton. . . ."

The chancellor, after considering the will, the exhibits and the evidence presented in depositions* and in an *ore tenus* hearing, found in favor of the plaintiffs, granted the prayer of the bill of complaint, and denied the cross-bill. We awarded defendants an appeal from the June 1977 final decree embodying the chancellor's decision.

The typewritten will provides in pertinent part as follows:

We, D. B. Sutton and Sarah B. Sutton, husband and wife, of Miami, Dade County,

---

*Many objections to testimony were made by both counsel during the taking of the depositions. These objections were not urged before the chancellor and consequently the trial court did not rule on any of them. At the bar on appeal, counsel agreed that all of the deposition testimony could properly be considered by us.

Florida, being each of sound mind and memory, and mindful of the uncertainty of human life, do hereby make, publish and declare this, our conjoint Last Will and Testament, hereby revoking all former wills or codicils or other like papers of similar import or intent, by either of us heretofore made and executed.

FIRST: The said D. B. Sutton does hereby will and direct that there first be paid out of his estate his funeral expenses and the expenses of his last illness, with all his just debts and liabilities, and thereafter does hereby will, devise and bequeath to his said wife, Sarah B. Sutton, (should she survive him) all the rest and residue of his estate, of whatever nature and wherever situated. The said D. B. Sutton does hereby appoint the said Sarah B. Sutton, sole executrix of this his last will and testament, and directs that no bond or other like undertaking be required of her as such executrix.

SECOND: Likewise, the said Sarah B. Sutton does hereby will and direct that there first be paid out of her estate, her funeral expenses, the expenses of her last illness and all her just debts and liabilities. All the rest and residue of her estate, of whatever nature and wherever situated, the said Sarah B. Sutton does hereby devise and bequeath to her said husband, D. B. Sutton, (should he survive her), and does hereby appoint the said D. B. Sutton as sole executor of this her last will and testament, and directs that no bond or other like undertaking be required of him as such executor.

THIRD: Both parties to this conjoint last will and testament hereby jointly and severally agree not to sell, encumber or otherwise hypothecate or dispose of any property or estate now held or owned by either, without the written consent of the other party, it being the mutual desire and will of both parties to this

indenbture to hold all property now owned *of* hereafter acquired by either for the use and benefit of their natural offsprings, Martha Louise and Virginia, their children born to the union of the parties hereto.

FOURTH: In the event of the simultaneous death of both parties hereto, resulting from any accident or otherwise, then each of the parties to this Last Conjoint Will and Testament, does hereby name, comstitute and appoint their older daughter, Martha Louise Oswald, as sole executrix of this our Last Will and Testament, and we do each, jointly and severally direct that she be not required to give bond or other like undertaking, as such executrix.

FIFTH: Should neither of the parties hereto survive the other, then we each do hereby give, will, devise and bequeath to our said children, share and share alike, all the residue of our estates, of whatever nature and wherever situated, after the payment of all our just debts, including the expenses during our last illness with funeral charges, as hereinabove provided for. It is the intent of this Last Will and Testament, that any and all property left by either of the parties to this instrument, at the time of their death, respectively, shall be and become the property of our said children, share and share alike.

Briefly stated, defendants argue that the language of paragraphs Third and Fifth of the will limit or reduce the estate devised to Sarah Belle Sutton by paragraph First. They contend that the joint will, particularly paragraphs Third and Fifth, contain "reciprocal testamentary provisions, contractual in nature, between the testators for the benefit of Virginia Sutton Salley which became binding upon Sarah Belle Sutton upon the death of D. B. Sutton so as to now entitle [the daughter] to enforce the same in equity".

Plaintiffs assert that a reading of the entire will shows that D. B. Sutton's intention was to transfer to his wife an estate in fee simple in all his property, rather than creating either a life estate in the

wife, with remainder to the two daughters, or a fee simple in the daughters. They argue that the provisions of paragraph Third that both testators would not sell the property then owned by either, without the written consent of the other, did not prohibit the valid sale of the tract in question by Mrs. Sutton. They point out that a will is revocable and that by the terms of this will the prohibition was limited to the joint lives of the testators. Further, they say that the entire provision was made precatory by the statement that its purpose was to express the desire or wish of the Suttons that they hold the property of each for the benefit of their two daughters.

■ When the words of a will are of doubtful meaning, and such an uncertainty is not resolved by reading the will as a whole, the judicial expositor may properly consider admissible extrinsic evidence "to place himself in the atmosphere of the testator at the time of making his will, so as to enable him to see things as the testator saw them," *McCabe* v. *Cary's Executor,* 135 Va. 428, 434, 116 S.E. 485, 487 (1923). Thus, parol evidence may be considered to establish the relevant facts and circumstances which surround the testator at the time of the execution of the will. 1 T. Harrison, *Wills and Administration* § 254, at 461 (2d ed. G. Smith 1960).

Consequently, we turn to the extrinsic evidence as we seek to determine D. B. Sutton's intent. In 1921, the Suttons moved to Florida where they together operated a jewelry business in downtown Miami. Although she was "sick a great deal of the time", Mrs. Sutton assisted in the operation of the business for almost 20 years. This enterprise was the Suttons' primary source of income.

The evidence showed that prior to the time the will was drawn in 1950, D. B. Sutton habitually drank alcoholic beverages to excess. One of the witnesses, a life-long Lebanon resident and a friend of the Suttons, testified that on the one occasion when he visited the testators in Florida for a period of two weeks, Mr. Sutton "never appeared around" the home and that "he was [routinely] in some bar someplace drinking . . . ." The same witness testified that he always saw Sutton during the testator's annual visits to Russell County and that Sutton was intoxicated on "practically" every occasion. The evidence further showed that before the will was drawn, Sutton had gone into the testators' "safety deposit box and had taken a good deal of money out because he was not . . . himself."

The will was drafted by one of the Suttons' closest friends, a

Florida attorney. Mrs. Sutton testified that she was present when the provisions of the will were discussed and that she conversed with the attorney in Mr. Sutton's presence concerning "the provision that property would not be sold . . . ." She testified that during the discussion, "they [the attorney and D. B. Sutton] thought because of that—of his drinking problem—that it would be better if he didn't have—that I could—that neither of us could sell anything without the other's consent."

At the time the will was drawn, D. B. Sutton owned in his sole name the 140-acre tract in Russell County, a residence in Miami and a small checking account. Upon acquisition of the tract in question in 1937 by the testator, Thomas Burns assumed occupancy of the property. The Burns family has lived there rent-free and has farmed the land since that date. Thomas Burns was the brother of Mrs. Sutton and the father of plaintiff Charles Sutton Burns.

When the will was drawn, the Suttons jointly owned four tracts of land in Florida as tenants by the entirety with common law right of survivorship. This land consisted of a 63-acre tract near Stuart, known as the Hobe Sound property; a 17.5-acre tract at Naranja; an 18-acre tract referred to as the Black Point property and a dwelling house in Miami. They also owned a small amount of bonds registered in both names.

Upon Sutton's death in 1955, there was insufficient cash in the estate, valued then at $65,000, to pay the funeral expenses. The jewelry business previously had been sold and except for the bonds and a small checking account there were no other liquid assets. Because the income from the estate was insufficient to pay the cost of taxes and insurance on the realty or to pay Mrs. Sutton's living expenses, she immediately began selling some of the real estate.

During the period from 1956 to 1969, in addition to the sale of the land in question, Mrs. Sutton disposed of the Hobe Sound, Naranja and Black Point properties. She used some of the proceeds for personal living expenses, applied a substantial sum to the Russell County property prior to its sale, and deposited amounts in various banks in the names of her daughters and grandchildren. By deed of gift in 1960 she conveyed the Miami residence property to defendant Virginia Sutton Salley.

In 1972, a question arose, based on paragraphs Third and Fifth of the will, in connection with the title to the Virginia property when Charles Burns sought to refinance a previous loan secured by

a deed of trust on the property. Thereafter, the daughter, Martha Louise Oswald, and her husband executed separate quit-claim deeds to that property in favor of both her mother and Burns. The other daughter, defendant Virginia Salley, and her husband refused to execute similar instruments. This suit ensued.

At the conclusion of the proceedings below, the trial court held that Sarah Belle Sutton "acquired absolute fee simple title" to the 140-acre tract in question "under the joint will of D.B. Sutton", that Burns acquired fee simple title to the 135-acre portion of the tract, and that Mrs. Sutton "owns the 5 acre portion."

The defendants argue that the chancellor's holding serves only "to frustrate and defeat the plainly expressed intention of" the testator. They contend that the language of paragraph Third and of the last sentence of paragraph Fifth was "the plain, clear and deliberate statement of the intent of Mr. and Mrs. Sutton that the properties then owned by them should not and could not be disposed of by either but would become the properties of their two daughters at the time of their deaths, respectively." The defendants seek to buttress their argument by emphasizing the portion of Mrs. Sutton's testimony in which she indicated that the purpose of paragraph Third was to assure "that neither of us could sell anything without the other's consent."

The defendants also assert that paragraph Third was a "solemn and binding contract and agreement between the joint testators for the benefit of their children." Relying on *Williams* v. *Williams*, 123 Va. 643, 96 S.E. 749 (1918), defendants assert that "such a contract, supported by adequate consideration in the form of mutual promises and obligations, may not be revoked or disregarded by one of the joint testators after the death of the other." Defendants contend that Sutton abided by the terms of the contract from 1950, when the will was executed, to 1955, when he died; that at "no time prior to her husband's death did Mrs. Sutton undertake to revoke or repudiate the will"; and "that she cannot now escape the binding effect of a contract fully performed by the other party thereto." We do not agree with defendants' contentions.

Virginia follows the generally recognized view that a joint will is valid and may be admitted to probate successively upon the death of each testator as his separate will. *Williams* v. *Williams*, 123 Va. at 646, 96 S.E. at 750. In referring to a "joint will", we mean "a single testamentary instrument that embodies the testamentary

plan of two or more persons and is separately executed by each of the testators using the instrument." 1 W. Bowe & D. Parker, *Page on Wills* § 11.1, at 551 (1960). It has been stated, however, that the "use of a joint will is not advised, for there is greater likelihood that pitfalls of execution and draftsmanship will arise." *Id.* at 553.

■ When a joint will is involved, it frequently becomes "important to distinguish between the concept of wills and that of contracts." T. Atkinson, *Law of Wills* § 49, at 224 (2d ed. 1953).

> Generally speaking, wills are in their nature ambulatory or revocable, and cannot be made otherwise, even by the most express terms. This inherent quality of revocability belongs to all wills which do not partake of the nature of a contract. The mere fact that the will is made jointly by two or more testators does not affect the right of either to revoke the same at his pleasure, whether the revocation be made before or after the death of the others; but the fundamental reason for this rule is that every purely testamentary disposition of property is in the nature of a gift, and a different rule applies where a contract 'is disguised under the name and appearance of a will.' [Citations omitted.] In the latter event the contractual nature of the instrument does not necessarily defeat its character as a will, but enables the party for whose benefit the contract was made to prevent, by resorting to a court of equity, a revocation which would destroy the compact or the trust created thereby.

*Williams* v. *Williams*, 123 Va. at 646-47, 96 S.E. at 750.

And when reciprocal testamentary provisions are made for the benefit of a third party, there is sufficient consideration for the contractual element of the will to entitle the beneficiary to enforce the agreement in equity, *provided* the contract itself is established. *Id.* at 649, 96 S.E. at 751. But proof of the agreement must be "clear and satisfactory." *Id.* Such proof "may expressly appear in the language of the instrument, or it may be supplied by competent witnesses who testify to admissions of the testators, or it may result as an implication from the circumstances and relations of the

parties and what they have actually provided for by the instrument." *Id.* at 649-50, 96 S.E. at 751.

■ With these principles in mind, we look to the will, considering all of its provisions together, and to the facts of this case to decide the issue: What was the testator's intention?

We conclude that the will, when considered in light of the surrounding circumstances of the testators, discloses an intention by the Suttons to devise and bequeath his or her entire estate to the survivor of them. We also believe that the language in paragraphs Third and Fifth, relied on by defendants, when viewed along with the circumstances, does not sufficiently manifest an intention to create a binding contract in which both agreed not to dispose of property after the death of the other. Instead, we think these provisions set forth a limited agreement between the testators that *during the lifetime of both* neither would dispose of his or her property without the other's consent.

Initially, we examine the circumstances surrounding the execution of the will. The testators, apparently devoted to each other, had been partners in a marriage of long duration and in a business venture which furnished their sole means of support. They had two adult daughters, neither of whom was shown to have been in need of financial assistance. The husband owned a residence in Miami, the Russell County tract and a small bank account. The parties jointly owned as tenants by the entirety, with right of survivorship, four parcels of land in Florida. They also jointly owned some bonds.

The evidence shows that the Suttons had the normal parental desire to provide for their children after the death of both spouses. In addition, the record also demonstrates that because of the personal habits and past conduct of Mr. Sutton, there was an apparent need in 1950 to protect against the possibility that he would make a reckless disposal of assets during periods of intoxication.

Next, with these circumstances in view, a testamentary scheme of the testators to leave his or her entire estate to the survivor develops as the terms of the will are considered. In paragraph First, Sutton, using testamentary language, directed that after payment of debts and last expenses, he "does will, devise and bequeath" to his wife, if she survives him, all the rest, residue and remainder of his property, naming her as executrix of the estate.

That language was dispositive and she took absolutely, provided only that she survive him.

Paragraph Second, also employing testamentary words, is identical except that Mrs. Sutton "does hereby devise and bequeath" all her property to him, if he survived her. He was designated as executor of her will. That language, too, was dispositive and he took absolutely, if he survived her.

Paragraph Fourth speaks to the circumstance of a simultaneous death of both and nominates the older daughter as executrix. Paragraph Fifth, again using testamentary terms, provides that in the event of such simultaneous death, "we each do hereby give, will, devise and bequeath" all the residue of the estate, after the payment of debts and last expenses, equally to the two daughters. Again, language is included which is manifestly dispositive.

As plaintiffs argue, paragraphs First, Second and Fifth thus take into account all contingencies of survivorship. If either spouse survives, the property vests absolutely in the other. If neither survives, the property vests in the daughters equally. There was no condition, limitation, or other provision restricting the estate of either survivor to less than a fee simple estate nor was there any express or implied creation of a life estate in either of the surviving testators.

But in contrast to the testamentary language used in the dispositive provisions of paragraphs First, Second and Fifth, paragraph Third and the second sentence of paragraph Fifth employ nondispositive language only. In paragraph Third, the Suttons expressed in precatory terms their "mutual desire and will" to hold their property for the benefit of their children. In paragraph Fifth, dealing with simultaneous death, the parties stated an "intent" that all property "*left* by either of the parties" to the will become the property of the children equally. That sentence is consistent with the testamentary scheme by providing that the property remaining or "left" at the death of the testators will pass to the children. Use of the word "left" indicates that the property became freely alienable and transferable by the survivor after the death of one spouse.

Also consistent with the testamentary scheme which we think flows from the manifest intention of the testators, paragraph Third sets forth an agreement limited to the joint lives of the Suttons, its purpose being to deter thoughtless wasting by the husband of his

assets. The parties agreed not to dispose of *"any* property or estate *now* held or owned by either" without the other's written consent, consonant with the desire to provide for their children after the testators had both died.

To hold, as the defendants urge, that a binding contract was created, nullifies the testator's clearly expressed intention, to which we have already adverted, to provide for his wife should he predecease her. If the defendants' construction is adopted, the survivor of the first of the testators to die could not dispose of any of the property but must hold it for the benefit of the two daughters. The wife would have been left destitute with no income and perhaps without power by virtue of such a contract to transfer even the Florida real estate held by the entireties. Even if such property ordinarily would have passed by operation of law outside the will, nevertheless its alienation would have been prohibited by the terms of the binding contract urged by the defendants. Such an unreasonable result is completely foreign to the testamentary scheme established by the other provisions of the will. If achievement of that goal had been the testators' purpose, language more explicit could have been used. When an estate in fee simple is devised in one part of a will, by clear and unambiguous words, such estate is not diminished nor destroyed by terms contained in another part of the instrument, unless such terms which reduce the estate be as clear and decisive as the words by which it was created. *Smith* v. *Trustees of the Baptist Orphanage,* 194 Va. 901, 908, 75 S.E.2d 491, 495-96 (1953).

In sum, we do not think the contract contended for by defendants, who focus on isolated clauses of the will rather than the whole instrument, has been established by the required clear and satisfactory proof.

Finally, we are not persuaded to a contrary conclusion by *Williams,* which is factually dissimilar. There, the proof which is absent here was present and a mutual agreement between the testators was properly enforced against the survivor.

For these reasons, the trial court correctly held that Sarah Belle Sutton obtained under the will of her husband a fee simple interest in the 140-acre tract in question and that Charles Sutton Burns acquired as the result of the conveyance from Mrs. Sutton the same interest in the 135-acre tract, free and clear of any interest of Virginia Sutton Salley. Consequently, the decree appealed from will be

*Affirmed.*