Present: Keenan, Koontz, Kinser, Lemons, Goodwyn, and
Millette, JJ., and Russell, S.J.

VIRGINIA HOME FOR BOYS AND GIRLS     OPINION BY
                                     SENIOR JUSTICE CHARLES S. RUSSELL
v.  Record No. 090010                January 15, 2010

WILLIAM RAY PHILLIPS, ET AL.

            FROM THE CIRCUIT COURT OF SUSSEX COUNTY
                    Sam Campbell, Judge

     This is a dispute between a devisee under a will and a
relative of the testator claiming under an oral agreement.  It
involves the "Dead Man's Statute," Code § 8.01-397, and the
Statute of Frauds, Code § 11-2.

                    Facts and Proceedings

     In accordance with familiar principles of appellate
review, the facts will be stated in the light most favorable
to the prevailing party at trial.  William Ray Phillips
(Phillips) grew up in Sussex County.  He lived with his
parents about a mile away from the farm of Wayland and
Margaret Council.  Wayland Council (Wayland) was Phillips'
uncle.  At the age of ten, Phillips moved to the Council home
and lived with them, helping with the farm work, until he
graduated from high school.  The Councils had no children and
Phillips was described by another relative as "the closest
thing they had to a son."  Phillips went to college after high
school.  In 1970, shortly after finishing college, he was
employed by a tobacco company in Petersburg.  Thereafter, he

married and lived with his wife in a home they acquired about five minutes away from his place of employment.

In 1977, Phillips' uncle Wayland asked him to come to the Councils' farm in Sussex County to discuss a proposal. During a conference at the Councils' kitchen table, both Councils were present but Wayland "did . . . most of the talking." He proposed that Phillips move to the farm where the Councils would sell him a parcel of land on which to build a home for his family. Philips would then work on the farm, assisting his uncle until 1980, when Wayland planned to retire. Thereafter, Phillips would take over the farming operation, paying rent to the Councils for the land, machinery and farm equipment, and a wage to Wayland for any farm work he might do. Phillips was also to be available for any business or personal help the Councils might need in their later years. In return, Phillips testified, the Councils promised to leave him whatever assets they had, real or personal, when the last survivor of them died. Phillips testified that he agreed to this proposal, understanding that the Councils might consume all their assets while living and that he could ultimately receive "everything or nothing, whatever was left in their estate was to go to me." The agreement was entirely oral and no written memoranda of it existed. Only Phillips and the Councils were present at the conference.

In reliance on the agreement, Phillips sold his home, purchased 1.618 acres of the farm from the Councils, took out a construction loan, built a new home on the lot and moved there with his family, which now included a three-year-old son. Phillips continued to commute to his job at the tobacco company in Petersburg from 1977 until his uncle retired in 1980, adding about 40 miles per day to his travel to and from work. He also helped his uncle with farm work.

In 1980, when Wayland retired, Phillips took over the farming operation. He paid rent to the Councils for the farm land and equipment, paid wages to Wayland and assisted the Councils with their affairs. In 1980, Phillips' first year of farming operations, the area experienced a severe drought. In order to pay expenses for that year and to have "start-up money" for the next, Phillips borrowed $30,640 from a federal agency to be repaid over 20 years, secured by a second deed of trust on his home. The Councils were not liable for this debt. Phillips repaid the loan in 2001.

Wayland died in 1982. His will left all his property to his wife but provided that if she predeceased him, his entire estate would go to his nephew, Phillips. Phillips testified that Margaret Council (Margaret) showed the will to him when they went to the clerk's office to offer it for probate and told him "mine is just like it."

In 1987, the plant in Petersburg was closed.  The tobacco company, however, offered Phillips an opportunity to transfer to another plant in Georgia.  Phillips declined the offer because he would be unable to fulfill his agreement with the Councils if he moved.  He was compelled to accept a position in Hampton with a considerably lower salary and benefits that required him to travel 100 miles per day to and from work.

After Wayland died, other witnesses testified that Margaret became "angry . . . that he died," "very eccentric," "very reclusive," and "would change her mind from one day to the next on what she was going to do."  Phillips testified that her attitude toward him changed.  "She had become a little more reclusive.  Wanted to be by herself more.  Wanted to make decisions on her own."  She gave Phillips a durable power of attorney in 1992, but in October 1996 Phillips received a letter from her attorney advising him that she had "made some changes in her estate plan."  The letter enclosed a revocation of Phillips' power of attorney.

Margaret died on April 6, 2005.  Her will was admitted to probate.  Except for a few household furnishings, it leaves all her real and personal property to the "Virginia Home for Boys in Richmond, Inc."  The name of that entity was changed in 2004 to Virginia Home for Boys and Girls (the Home) and

4

Phillips does not dispute that it is the proper party in interest.

Phillips filed a complaint in the circuit court, naming the Home and the executrix under Margaret's will as defendants.  He seeks imposition of a trust on Margaret's assets and specific performance of the parol agreement he had made with the Councils in 1977.  Phillips contested neither the validity of the will nor Margaret's testamentary capacity.  The circuit court heard the evidence ore tenus, considered the briefs and arguments of counsel, and by a memorandum opinion ruled in Phillips' favor, finding that his part performance of the parol agreement was sufficient to take the case out of the statute of frauds and that the existence of the agreement was sufficiently corroborated by circumstantial evidence.  The court entered an order directing transfer to Phillips of all of the net personal estate and all of the real property of which Margaret had died seized.  We awarded the Home an appeal.

## Analysis

Code § 8.01-397 provides, in pertinent part:

**Corroboration required and evidence receivable when one party incapable of testifying.** – In an action by or against a person who, from any cause, is incapable of testifying, or by or against the committee, trustee, executor, administrator, heir, or other representative of the person so incapable of testifying, no judgment or decree shall be

5

rendered in favor of an adverse or interested party founded on his uncorroborated testimony.

The Home argues that this provision is fatal to Phillips' claim because the record is devoid of any evidence, aside from the testimony of Phillips himself, that the 1977 kitchen-table conference ever took place, that any oral agreement was ever made between Phillips and the Councils, or, if such an agreement was made, what its terms and conditions were. Phillips agrees that no written memorandum of the agreement was made and that no other witnesses testified to its existence, but contends that the circumstantial evidence strongly corroborates his testimony.  He also points out that the circuit court's findings of fact in his favor are entitled to a presumption of correctness and should not be disregarded on appeal unless they are plainly wrong or without evidence to support them.

Code § 11-2 provides, in pertinent part:

**When written evidence required to maintain action.** – Unless a promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, is in writing and signed by the party to be charged or his agent, no action shall be brought in any of the following cases:

. . . .

6.  Upon any contract for the sale of real estate, or for the lease thereof for more than a year; . . .

6

This section has repeatedly been held applicable to oral contracts to devise real estate.  <u>See</u>, <u>e.g.</u>, <u>Hill v. Luck</u>, 201 Va. 586, 589, 112 S.E.2d 858, 860 (1960); <u>Clay v. Clay</u>, 196 Va. 997, 1004, 86 S.E.2d 812, 816 (1955); <u>Ricks v. Sumler</u>, 179 Va. 571, 575, 19 S.E.2d 889, 890 (1942).

A parol contract to devise land may, however, be taken out of the Statute of Frauds by evidence of part performance on the promisee's part.  To prevail, the promisee must establish: (1) that the parol agreement relied on is "certain and definite in its terms," (2) that his acts of part performance were done "in pursuance of the agreement proved," and (3) that the agreement has been "so far executed that a refusal of full execution would operate a fraud" upon him. <u>Clark v. Atkins</u>, 188 Va. 668, 674-75, 51 S.E.2d 222, 225 (1949) (quoting <u>Wright v. Pucket</u>, 63 Va. (22 Gratt.) 370, 374 (1872).  <u>See</u> <u>also</u> <u>Moorman v. Blackstock, Inc.</u>, 276 Va. 64, 79, 661 S.E.2d 404, 412 (2008).

The Home contends, among other things, that Phillips' evidence fails to take the case out of the Statute of Frauds because of lack of competent proof of an agreement.  Thus, the Home contends, Phillips failed to meet the first two requirements of <u>Clark</u>, quoted above.  Phillips argues that the circumstantial evidence abundantly corroborates the existence

7

of the agreement, its terms, and his performance of all the duties it required of him, as the circuit court found.

At common law, when one who would have been a party litigant had been rendered incapable, by death or incapacity, from testifying in his own behalf, an adverse party litigant was disqualified as a witness in his own behalf on the ground of interest. The Dead Man's Statute substituted the more flexible requirement that the testimony of the surviving witness be corroborated in place of the harsh common-law rule. Diehl v. Butts, 255 Va. 482, 488, 499 S.E.2d 833, 837 (1998); Vaughn v. Shank, 248 Va. 224, 229, 445 S.E.2d 127, 130 (1994); Hereford v. Paytes, 226 Va. 604, 608, 311 S.E.2d 790, 792 (1984).

We have, in many cases, considered the nature and degree of the corroboration required under this statute. Because the statute's purpose is remedial, the kind and quantity of corroboration required depend largely upon the facts of each case and no general rule of universal application exists. It is well established that corroboration may be shown by circumstantial evidence, that not every material point upon which the surviving party testifies must be corroborated, and that corroboration need not rise to the level of confirmation, but need only serve to strengthen the surviving witness' account. Nevertheless, one essential requirement is implicit

in all our cases:  evidence, to be corroborative, must be independent of the surviving witness.  It must not depend upon his credibility or upon circumstances under his control.  It may come from any other competent witness or legal source, but it must not emanate from him.  Leckie v. Lynchburg Trust and Savings Bank, 191 Va. 360, 370, 60 S.E.2d 923, 928 (1950); see also Johnson v. Raviotta, 264 Va. 27, 32, 563 S.E.2d 727, 731 (2002); Rice v. Charles, 260 Va. 157, 166, 532 S.E.2d 318, 323 (2000); Martin v. Martin, 202 Va. 769, 774, 120 S.E.2d 471, 474 (1961).

## Conclusion

Our review of the record, in light of that requirement, discloses no evidence that is independent of Phillips' testimony corroborating the existence or the terms of the parol agreement on which he relies.  Phillips' personal credibility is not in question, and the circuit court was entitled to weigh it and find it persuasive.  The requirement of corroboration, however, imposed a separate burden upon Phillips that is independent of the weight and sufficiency of his own testimony.  The General Assembly chose to impose that burden to replace the heavier burden formerly imposed by the common law on a litigant claiming against an opponent incapable of testifying.  Although the requirement of corroboration might sometimes lead to results not intended by

9

parties to an oral agreement, it is evident that the legislative judgment was that such occasional unfortunate results were preferable to a state of the law in which every will would be subject to challenge after the testator's death by a claimant asserting an oral agreement contrary to the will's provisions, based only on the claimant's self-serving testimony.

Because Phillips failed to carry the burden of proving corroboration imposed upon him by the Dead Man's Statute, his claim also fails to satisfy the Statute of Frauds. As noted above, Code § 11-2(6) applies to parol contracts to devise land. Part performance may only be relied on to take the case out of the Statute of Frauds when the claimant establishes that the parol agreement is "certain and definite in its terms" and that his part performance was done "in pursuance of the agreement proved." Clark, 188 Va. at 674-75, 51 S.E.2d at 225. Because of the effect of the Dead Man's Statute, Phillips failed to meet the legal standard for proving either the terms of the parol agreement or its existence.

We conclude that the circuit court erred in granting specific performance of the parol agreement and will accordingly reverse the judgment appealed from and enter final judgment in favor of the Home.

Reversed and final judgment.

10