PRESENT: All the Justices

WALTER STEVEN KEITH

                                                        OPINION BY

v.  Record No. 110433         JUSTICE CLEO E. POWELL
                                            April 20, 2012

VENOCIA W. LULOFS, EXECUTRIX OF
THE ESTATE OF LUCY F. KEITH

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Timothy S. Fisher, Judge

The issue before this Court is whether the trial court erred in deciding that Walter Steven Keith ("Keith") failed to prove that the 1987 wills executed by Arvid L. Keith, Jr. ("Arvid") and Lucy F. Keith ("Lucy") were irrevocable, reciprocal wills. We hold that the trial court did not err and, therefore, will affirm the trial court's judgment.

I. FACTS AND PROCEEDINGS

At the trial on this matter, the evidence proved that Arvid and Lucy were married in 1972. At the time of their marriage, each had a child from a previous marriage: Arvid had a son, Keith, and Lucy had a daughter, Venocia W. Lulofs ("Lulofs").

Arvid and Lucy executed wills on December 9, 1987, that were "mirror images" of each other. Each will left the estate first to the surviving spouse and then to Keith and Lulofs equally.

Arvid died on March 21, 1996, and his estate passed to Lucy pursuant to the 1987 will. Following Arvid's death, Lucy executed a new will on May 17, 1996, in which she left the

entirety of her estate to Lulofs and made no provision for Keith. Lucy died in 2006. After Lucy's death, Lulofs attempted to probate Lucy's will, which Keith challenged.

The evidence also demonstrated that in 1994, Arvid and Lucy took out an insurance policy naming both Keith and Lulofs as the primary beneficiaries, each with a 50% share of the proceeds. Lucy changed the beneficiary percentages on the insurance policy on April 1, 1996, such that Keith would receive 22% and Lulofs would receive 78%. Lucy changed the insurance policy again on May 30, 1996, so that Lulofs received 100%.

Keith testified about several conversations that he had had about the wills and insurance policy. Specifically, he testified that in 1991, his father told him that he and Lucy made "reciprocal wills" leaving everything to Lulofs and him in equal shares. He testified that in 1994 Lucy mentioned the life insurance policy, saying that they did this so there "won't be any money to fight over once we die." He also testified that shortly before Arvid died, Arvid told him to "watch out for [Lucy]." Arvid told him that he was going to ensure that everything was divided evenly. Keith testified that Lulofs told him in 2006 that their parents had reciprocal wills.

Lulofs testified that she recalled a discussion between Arvid, Lucy, Keith and herself about the life insurance policy, but did not remember the specifics of that conversation.

2

Keith argued that Arvid and Lucy executed reciprocal wills in 1987 that became an irrevocable contract upon the death of either party.  He also alleged that the estate was to be funded with the proceeds of the life insurance policy and that the policy was evidence of the testators' intent to make the 1987 wills irrevocable.

Although the trial court concluded that the 1987 wills were "mutual and reciprocal," it found that the evidence was insufficient to prove that the wills reflected a contractual agreement to bind the survivor.  Specifically, the trial court noted that the attorney who drafted the 1987 wills for Arvid and Lucy had no recollection of the wills or the circumstances under which they were prepared and executed.  The attorney also did not remember the 1996 will that he drafted for Lucy after Arvid's death.

The court admitted the insurance applications submitted by Arvid and Lucy and the resulting joint insurance policy as potentially corroborative evidence of Keith's testimony.  The court concluded, however, that the insurance policy shed little light on the intent of the testators to make the wills irrevocable.  The trial court held that there was no evidence that Lucy did not have the authority to change the beneficiary of the life insurance policy after Arvid's death.

3

Finally, the trial court held that Keith's testimony as to the intent for the wills to be irrevocable was uncorroborated and, therefore, there was insufficient evidence that the testators' intended to make the 1987 wills a contract when they executed them.  The circuit court accepted Lucy's 1996 will for probate and entered judgment accordingly.  This appeal follows.

## II. ANALYSIS

On appeal, Keith makes two basic arguments.  First, Keith contends that because the 1987 wills were "mirror image" wills, the testators' intended them to be irrevocable.  Second, he argues that even if the content of the wills does not clearly establish their contractual nature, he presented sufficient corroborative evidence of the testators' intent.  Specifically, he asserts that 1) the testimony from Keith and Lulofs corroborated the 1987 wills; 2) the 1994 insurance policy indicates the intent that the 1987 wills were to be irrevocable upon the death of one testator; and 3) Keith's testimony about various out-of-court statements by Arvid corroborate the parties' intent.

### A. The Trial Court Did Not Err In Holding That The Wills Did Not Form An Irrevocable Contract Between The Testators

Where a party asserts that the wills are reciprocal and irrevocable, it is important to distinguish the law of wills and the law of contracts.  See Salley v. Burns, 220 Va. 123, 131,

255 S.E.2d 512, 516 (1979) (citing T. Atkinson, Law of Wills § 49, at 224 (2d ed. 1953)).  A significant distinction between the two areas of law is that wills, unlike contracts, generally are unilaterally revocable and modifiable.  Williams v. Williams, 123 Va. 643, 646, 96 S.E. 749, 750 (1918).  A will does not become irrevocable or unalterable simply because it is drafted to "mirror" another testator's will.  See id.

> [T]he fundamental reason for this rule is that every purely testamentary disposition of property is in the nature of a gift, and a different rule applies where a contract "is disguised under the name and appearance of a will."  In the latter event the contractual nature of the instrument does not necessarily defeat its character as a will, but enables the party for whose benefit the contract was made to prevent, by resorting to a court of equity, a revocation which would destroy the compact or the trust created thereby.

Id. at 646-47, 96 S.E. at 750 (citations omitted).  Thus, "when reciprocal testamentary provisions are made for the benefit of a third party, there is sufficient consideration for the contractual element of the will to entitle the beneficiary to enforce the agreement in equity, provided the contract itself is established."  Salley, 220 Va. at 131, 255 S.E.2d at 516.  Proof of the contractual nature of this agreement between the testators must be "clear and satisfactory."  Id.

> Such proof "may expressly appear in the language of the instrument, or it may be supplied by competent witnesses who testify to admissions of the testators, or it may result as an implication from the circumstances and relations of the

5

parties and what they have actually provided for
by the instrument."

Id. at 131-32, 255 S.E.2d at 516-17.

In Black v. Edwards, 248 Va. 90, 93, 445 S.E.2d 107, 109 (1994), this Court held that the mutual and reciprocal wills at issue were irrevocable contracts. We based that decision upon the unimpeached testimony of the drafting attorney who testified that the parties intended to draft reciprocal, irrevocable wills. Id. Here, the attorney who drafted the wills for Arvid and Lucy in 1987 had no recollection of the wills or the circumstances under which they were prepared, nor did he remember the 1996 will that he drafted for Lucy after Arvid's death.

By contrast, in Salley, we determined that the evidence was insufficient to establish an irrevocable contract where a joint will stated that if either spouse survived the other, the property at issue vested in the survivor. Id. at 133, 255 S.E.2d at 517. The third paragraph of the will also contained a clause providing that

> [b]oth parties . . . jointly and severally agree
> not to sell, encumber or otherwise hypothecate or
> dispose of any property . . . without the written
> consent of the other party, it being the mutual
> desire and will of both parties to this
> indenbture [sic] to hold all property now owned
> of [sic] hereafter acquired by either for the use
> and benefit of their natural offsprings . . . .

6

<u>Id.</u> at 126-27, 255 S.E.2d at 514 (emphasis in original). The will further specified that if neither testator survived, the property vested in the daughters "share and share alike." <u>Id.</u> at 127, 255 S.E.2d at 514. Salley argued that the language of the third paragraph created a binding contract. <u>Id.</u> This Court held that no binding contract was created by the joint will because so holding would have required the surviving testator to hold the entire estate for the benefit of the daughters. <u>Id.</u> at 134, 255 S.E.2d at 518. Such a strained interpretation would have left the surviving testator destitute. <u>Id.</u>

> Such an unreasonable result is completely foreign to the testamentary scheme established by the other provisions of the will. If achievement of that goal had been the testators' purpose, language more explicit could have been used. When an estate in fee simple is devised in one part of a will, by clear and unambiguous words, such estate is not diminished nor destroyed by terms contained in another part of the instrument, unless such terms which reduce the estate be as clear and decisive as the words by which it was created.

<u>Id.</u> (citing <u>Smith v. Trustees of the Baptist Orphanage</u>, 194 Va. 901, 908, 75 S.E.2d 491, 495-96 (1953)).

The language at issue in <u>Salley</u> is very similar to the language in the 1987 wills:

> I give, devise and bequeath unto my beloved [spouse] if [spouse] survives me by thirty days, all of my property and estate, real, personal and mixed, wherever situate, whether now acquired or acquired hereafter, to be [spouse's] in fee simple and [spouse's] absolute property.

7

. . . .

> In the event that my [spouse] predeceases me or fails to survive me by thirty days, I give, devise and bequeath all of my property of every sort, kind and description, real, personal, and mixed, unto [Keith] and [Lulofs] in equal shares, share and share alike.

In both wills, the testators' clear intent was to transfer the estate to the surviving spouse.

Moreover, language in Salley was even more conducive to an argument that it created a contract because it expressly precluded either spouse from divesting himself or herself of any property without the consent of the other – an action that could only occur during the life of both. Despite this language, when focusing on the will as a whole, this Court found no clear and convincing evidence of an intent to form a binding contract. 220 Va. at 134, 255 S.E.2d at 518.

The interpretation urged by Keith would create the very real risk that any testator who executes a will that "mirrors" another will and contains language similar to that contained in the wills at issue here, would be unintentionally hamstrung by the death of the purportedly reciprocal testator. In fact, the testator would be unable to provide for any future spouse or any child born or adopted during a later marriage. Such an interpretation is unreasonable.

8

The language of these "mirror image" wills is insufficient alone to form a contract and, therefore, Keith failed to meet his burden to show that the 1987 wills were irrevocable. Thus, the trial court did not err in so holding.

### B. The Trial Court Did Not Err In Holding That Keith's Testimony Was Not Corroborated

Keith argued that even if the express language of the wills was not sufficient to establish a contract, he presented sufficient circumstantial evidence to establish that Arvid and Lucy intended for the wills to be contracts. We disagree.

In pertinent part the Dead Man's Statute, Code § 8.01-397, provides:

> In an action by or against a person who, from any cause, is incapable of testifying, or by or against the committee, trustee, executor, administrator, heir, or other representative of the person so incapable of testifying, no judgment or decree shall be rendered in favor of an adverse or interested party founded on his uncorroborated testimony.

This statute was enacted largely to provide relief from the harsh common law rule that would have prohibited testimony from the surviving witness and, therefore, the nature and quantity of the corroboration will vary depending on the facts of the case. Virginia Home for Boys & Girls v. Phillips, 279 Va. 279, 286, 688 S.E.2d 284, 287 (2010). Corroboration may, and often must, be shown through circumstantial evidence, but each point need not be corroborated nor must the corroboration rise to the level

9

of confirmation as long as the corroboration strengthens the testimony provided by the surviving witness.  Id. at 286, 688 S.E.2d at 287-88.

Here, Keith provided no independent evidence or testimony to corroborate his testimony regarding the contractual nature of the wills.  Keith's argument that Lulofs' testimony corroborates his is without merit.  Lulofs merely testified that she recalled a discussion about the insurance policy between herself, Keith, Arvid and Lucy, but Lulofs could not recall the specifics of that conversation.  Further, the existence of the insurance policy itself does not provide corroboration.  An insurance policy taken out seven years after the wills were executed cannot provide evidence as to the intent of the testators at the time the wills were drafted.  Thus, no evidence in this record corroborates Keith's testimony as required by the Dead Man's statute.

## III. CONCLUSION

For the foregoing reasons, we will affirm the judgment of trial court.

Affirmed.

10