COURT OF APPEALS OF VIRGINIA

Present: Judges AtLee, Athey and White
Argued at Lexington, Virginia

BUFORD ARNN, III, ET AL.

                                   MEMORANDUM OPINION* BY

v.      Record No. 0774-24-3           JUDGE RICHARD Y. ATLEE, JR.
                                     JUNE 24, 2025

BRENDA GEE, ET AL.

FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
Stacey W. Moreau, Judge

Lori D. Thompson (Spilman, Thomas & Battle, PLLC, on briefs), for
appellants.

William W. Sleeth, III (Jonathan W. Gonzalez; Gordon Rees Scully
Mansukhani, LLP, on brief), for appellees.

This case involves a dispute over the estate of Carrie Mae Jones Arnn ("Carrie Mae"). The circuit court found that handwritten documents, executed by Carrie Mae and her late husband, Buford Arnn, Jr. ("Buford"), did not constitute a valid and enforceable contract governing the distribution of Carrie Mae's estate. Appellants Buford Arnn, III, Judy Eades, and Denise Arnn Poage appeal that ruling, arguing that the documents were enforceable contracts and that the trial court should have granted them equitable relief. Because we agree with the circuit court that the purported testamentary documents were not enforceable contracts, we affirm.

## I. BACKGROUND

Buford and Carrie Mae married on November 25, 1982. Both Buford and Carrie Mae had children from prior marriages. Buford had three adult children, Buford, III, Judy, and Denise

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

(collectively "appellants"), from his prior marriage. Carrie Mae had two adult children, Brenda Gee and Raymond G. Jones, Jr. (collectively "appellees"), from her prior marriage.

At the time of their marriage, Buford and Carrie Mae each owned a residence that they had acquired during their prior marriages. After marrying each other, Buford and Carrie Mae retitled both properties so that they jointly owned each property as tenants by the entirety. They lived for a time in the property previously owned by Buford before selling that property and moving into the property previously owned by Carrie Mae.

During their marriage, Carrie Mae and Buford executed several handwritten documents. These documents, purportedly testamentary documents, disposed of their estates in the event of their deaths, and each document contained similar provisions.

They executed the first documents on June 24, 1986. Each spouse signed a separate handwritten document with mirroring provisions. Both provided that, when one spouse died, that spouse's personal property would go to the surviving spouse. Then, once the surviving spouse died, the personal property would be divided equally among the five adult children. If Buford and Carrie Mae died at the same time, personal property belonging to Carrie Mae and her prior husband would go to her children, and personal property belonging to Buford and his prior wife would go to his children. A similar provision was made for Buford and Carrie Mae's real estate and vehicles, with the property first going to the surviving spouse. Then, upon the death of the surviving spouse, or if Buford and Carrie Mae died at the same time, the property was to be sold, and the proceeds divided among the five children.

Just two days later, on June 28, 1986, Buford and Carrie Mae signed a single handwritten document, apparently intended as a joint will. This document contained the same basic provisions regarding the division of property.

On May 1, 1987, Buford and Carrie Mae executed another handwritten document, also apparently intended as a joint will. Both Buford and Carrie Mae signed that document, and their signatures were notarized. This document had the same basic provisions, including that the property be divided equally among the adult children. However, a handwritten notation in the margin next to the provision dividing the real estate stated "one half to Raymond & Brenda, one half to Buford, Judy & Denise Faith."

Buford and Carrie Mae executed the final handwritten document on January 17, 1995. It is a one-page document, written on the back of one of the pages of an earlier document, making it difficult to read. The document states, "Since Carrie's mother left her half of her estate[,] we Buford C. Arnn Jr. & Carrie Mae Arnn have agreed to divide[1] our estate half to her children and half to my children." It goes on to state "[o]ne half of everything to" Raymond G. Jones and Brenda Jones Gee, and "[o]ne half of everything to" Buford Clay Arnn, III, Judy Arnn Eades, and Denise Arnn Pogue. Both Buford and Carrie Mae signed that document.

On September 30, 1998, Buford passed away. At the time of his death, Carrie Mae possessed the handwritten documents, and she did not submit any of them for probate. Carrie Mae took possession of Buford's estate without going through probate.

At Buford's funeral, Carrie Mae told appellants she had Buford's will and asked if they wanted to see it. When they followed up, however, she did not show them the will. In January 2004, Denise's attorney sent Carrie Mae a written request to see the will, and Denise eventually viewed some of the handwritten documents. On January 29, 2004, Carrie Mae tried to submit the handwritten documents to the circuit court as Buford's last will, but the court rejected them.

On June 22, 2004, Carrie Mae executed a deed of gift "convey[ing] certain real property" to her children and the appellees, while reserving a life estate for herself. That same day, with the help

---

[1] Appellees "dispute that the word 'divide' is what is contained" in the document.

of an attorney, Carrie Mae executed a new will. Her new will divided her estate between her children but did not include Buford's children.

Carrie Mae died on September 15, 2020. Buford's children did not find out about the deed of gift or new will until after Carrie Mae's death. Upon discovery, appellants filed a complaint in the circuit court, asking the court to invalidate Carrie Mae's 2004 will and establish one of the joint documents executed by Carrie Mae and Buford as her last will. Alternatively, if the document was not a will, they sought specific performance of the purported testamentary documents as a contract. Appellants requested a constructive trust in their favor consisting of "Carrie Mae's estate and all assets improperly removed from Buford Jr.'s and Carrie Mae's estates."

Appellants pointed out that Virginia courts have enforced as contracts joint, mutual, and reciprocal wills that reflected an agreement between spouses as to the disposition of their estates. They argued that the handwritten documents were evidence that the parties agreed to make a joint disposition of their assets to all five of their children. And they argued that Buford had fully performed his part of the agreement but Carrie Mae had not.

The appellees stipulated that the writing and signatures in the documents were those of Buford and Carrie Mae. But they argued that the language in the handwritten documents was not sufficient to prove by clear and convincing evidence that the documents were intended to create an irrevocable contract under Virginia case law.

The circuit court found that the handwritten documents were not "valid and enforceable, and [they] d[id] not constitute a contract between" Buford and Carrie Mae. Thus, it denied appellants' requests for an accounting and equitable relief. Appellants now appeal.

## II. ANALYSIS

Appellants argue that the joint documents executed by Buford and Carrie Mae constitute valid and enforceable contracts. They argue that the joint documents "memorialize . . . the

agreement of Buford Jr. and Carrie Mae" that the assets would go first to the surviving spouse and then, upon the second of them to die, the "assets would be sold and divided equally between <u>all</u> of their adult children." In essence, they argue that executing a joint will automatically creates a binding contract not to revoke the will.

But "[w]hen a joint will is involved, it frequently becomes 'important to distinguish between the concept of wills and that of contracts.'" *Salley v. Burns*, 220 Va. 123, 131 (1979) (quoting Thomas E. Atkinson, *Law of Wills* § 49, at 224 (2d ed. 1953)); *see also Keith v. Lulofs*, 283 Va. 768, 772 (2012) ("[I]t is important to distinguish the law of wills and the law of contracts."). There is "[a] significant distinction between the two areas of law" because a will, unlike a contract, is generally "unilaterally revocable and modifiable." *Keith*, 283 Va. at 772. Although the execution of a joint will may, in some cases, create an enforceable agreement, *Williams v. Williams*, 123 Va. 643, 648-49 (1918), "[a] will does not become "irrevocable or unalterable simply because it was a drafted to 'mirror' another's will," *Keith*, 283 Va. at 773, or because it was drafted as a joint will, *see Salley*, 220 Va. at 134 (holding that a joint will did not create a binding contract).

> [T]he fundamental reason for this rule is that every purely testamentary disposition of property is in the nature of a gift, and a different rule applies where a contract "is disguised under the name and appearance of a will." In the latter event the contractual nature of the instrument does not necessarily defeat its character as a will, but enables the party for whose benefit the contract was made to prevent, by resorting to a court of equity, a revocation which would destroy the compact or the trust created thereby.

*Keith*, 283 Va. at 773 (alteration in original) (quoting *Williams*, 123 Va. at 646-47). Thus, "when reciprocal testamentary provisions are made for the benefit of a third party, there is sufficient consideration for the contractual element of the will to entitle the beneficiary to enforce the agreement in equity, *provided the contract itself is established*." *Salley*, 220 Va. at 131 (emphasis added).

Proof of an agreement "may expressly appear in the language of the instrument, or it may be supplied by competent witnesses who testify to admissions of the testators, or it may result as an implication from the circumstances and relations of the parties and what they have actually provided for by the instrument." *Keith*, 283 Va. at 773 (quoting *Salley*, 220 Va. at 131-32). Although "[d]irect evidence is not necessary," *Black v. Edwards*, 248 Va. 90, 92 (1994) (quoting *Williams*, 123 Va. at 649-50), "[p]roof of the contractual nature of this agreement between the testators must be 'clear and satisfactory,'" *Keith*, 283 Va. at 773 (quoting *Salley*, 220 Va. at 131).

In *Salley*, the Supreme Court held that the evidence did not establish an irrevocable contract where a joint will provided that if either spouse survived the other, the property at issue went to the surviving spouse. 220 Va. at 133. In *Salley*, as here, the will provided that if neither spouse survived, the property was to be divided between the children. *Id.* at 127. The Supreme Court held that the joint will did not create a binding contract because such an interpretation would have required the surviving spouse to hold the entire estate for the benefit of the children, leaving the surviving spouse destitute. *Id.* at 134. The Court found that such an unreasonable result was "foreign to the testamentary scheme established," and if that was the intended purpose, "language more explicit could have been used." *Id.* The language of the will established an intent to transfer the estate in fee simple to the surviving spouse. *Id.* at 132. Though the will contained a clause that prevented the parties from selling, encumbering, or otherwise disposing of the property without the written consent of the other, the Court found that limit applied "*during the lifetime of both*," and the language did not otherwise restrict the devise of the land to the surviving spouse. *Id.*

Likewise, in *Keith*, the Supreme Court found that the execution of "mirror image" reciprocal wills did not automatically create a contract. 283 Va. at 775. There was no testimony about the intent of the parties in drafting the wills. *Id.* at 773. The language of the wills was similar to the language of the joint will in *Salley* and, like in *Salley*, the Court was concerned that the surviving

spouse "would be unintentionally hamstrung by the death" of their spouse and would be unable to provide for any future spouse or child. *Id.* at 775. Thus, it held that the language of the mirror wills alone was insufficient to form a contract. *Id.*

By contrast, in *Black* and *Williams*, the Court found that the evidence established a contract. In *Black*, the Supreme Court held that the mutual and reciprocal wills at issue created irrevocable contracts because the drafting attorney testified that both spouses were informed and understood that they were contracting to leave the property remaining at the survivor's death to the parties named in the wills. 248 Va. at 93. In *Williams*, upon which appellants primarily rely, the Supreme Court found that a joint will was a binding agreement because of "the situation of the parties with reference to the respective lands devised, their relationship to the beneficiaries, their statements to the witnesses . . . , [and] the provisions of the will itself." 123 Va. at 650.

Here, unlike in *Black*, there was no testimony or evidence, from the attorney or anyone else, that the parties understood themselves to be entering into a binding contract. Nor do we have the additional circumstances that were present in *Williams*. Thus, we find the circumstances here are closer to the circumstances present in *Salley* and *Keith*. As established in *Salley*, the use of a joint will alone does not automatically establish an irrevocable contract. As in both *Salley* and *Keith*, there was no additional testimony or evidence establishing that Buford and Carrie Mae intended to execute a contract. Nor does their behavior establish such, as they repeatedly executed new documents and occasionally altered the terms of their purported wills. The language of the joint will here is like the language in the wills at issue in *Salley* and *Keith*, where the language granted full ownership to the surviving spouse. The language referring to the distribution of the property upon the death of the surviving spouse shows an intent to provide for the children, but it is not sufficient in itself to establish a binding and enforceable contract. Furthermore, as in *Salley* and *Keith*, the interpretation urged by appellants would create the risk that any testator who executes a

joint will "would be unintentionally hamstrung" by the death of their spouse and unable to control their own property. *Keith*, 283 Va. at 775. Thus, we find that appellants did not establish the existence of a contract by clear and sufficient evidence. Accordingly, the trial court did not err in finding that there was no binding and enforceable contract.[2]

### III. CONCLUSION

For the foregoing reasons, the circuit court is affirmed.

*Affirmed.*

---

[2] Appellants also argue that the trial court erred by refusing to grant them equitable relief and by refusing to impose a constructive trust. Both arguments, however, are premised on appellants' position that the purported testamentary documents established a binding contract. Because we find that the documents did not constitute a contract, we likewise find that the trial court did not err in refusing to grant equitable relief or impose a constructive trust.